Robert R. BEGO, Plaintiff
and Appellant,

v.

Tom GORDON, Hobart G. Peterson, Len-
hardt Aman and the Montrose Public
School District # 42–2, Defendants and
Appellees.

No. 15295.

Supreme Court of South Dakota.

Considered on Briefs Nov. 17, 1986.

Decided June 10, 1987.

Patrick W. Kiner, Mitchell, for plaintiff and appellant.

David R. Gienapp of Arneson, Issenhuth and Gienapp, Madison, for defendant and appellee (Tom Gordon).

Rodney R. Freeman, Jr. of Churchill, Manolis, Freeman & Volesky, Huron, for defendants and appellees (Peterson, Aman and Montrose Public School # 42–2).

SABERS, Justice.

Robert R. Bego (Bego), appeals an order granting summary judgment to the school district and its administrators based on sov-

ereign immunity, and the ruling that any ultimate recovery against Gordon must be reduced by the full amount of settlement. We affirm in part and reverse in part and remand.

### Facts

Bego was a tenured music teacher employed by Montrose Public School District # 42–2 (District), for the 1980/81 school year. Tom Gordon (Gordon), was a parent of a child within the District during the 1980/81 school year. Hobart G. Peterson (Peterson) was the Montrose High School Principal and Lenhardt Aman (Aman) was the District Superintendent at all times pertinent to this action.

On September 5, 1980, Bego and Gordon met in the principal's office at the high school to try to resolve a problem. During this meeting, a disagreement occurred between them. According to Bego, Gordon assaulted him and Peterson intentionally prevented him from leaving the office and in doing so, subjected Bego to a threatening environment. Gordon and Peterson deny these allegations. This first incident (# 1) gave rise to the present litigation as it relates to Gordon, Peterson, and the District.

On February 27, 1981, a second incident occurred, this time in the superintendent's office. According to Bego, Aman threatened him and physically detained him during a meeting they had concerning Bego's evaluation. Bego further alleges that in April of 1981, a third incident occurred when Aman made defamatory remarks about him in the presence of his students. Aman denies both claims. These incidents (# 2 and # 3), gave rise to another portion of this lawsuit which pertains to Aman and the District.

Bego was advised in early 1981 that his teaching contract with the District would not be renewed for the 1981/82 school year pursuant to SDCL 13–43–9.1. This action generated a lawsuit which Bego commenced against the District and its Board of Education. The parties entered into a Settlement Agreement and Stipulation dated October 27 and 29, 1981. Bego agreed to accept the sum of $12,890 in full satisfaction of all "physical, mental and emotional disturbances and injuries" which he had incurred as a result of the termination, and he further agreed to release the District from "any and all claims, causes of action, and claims for money damages or any other type of relief which [Bego] now may have, or had in the past, arising out of or connected with his termination from Respondent School District."

Bego filed this action on September 18, 1982, against Gordon, Peterson, Aman, and the District. Thereafter, the defendants moved to dismiss or in the alternative, for summary judgment. On January 13, 1986, the trial court entered an order granting summary judgment to Peterson, Aman, and the District based on the doctrine of sovereign immunity. The order denied Gordon's motion for summary judgment but held that any ultimate judgment recovered by Bego against Gordon must be reduced in the amount of $12,890, pursuant to SDCL 15–8–17. Bego appeals.

### Bego's Claims

Bego claims that the trial court erred in granting summary judgment on the basis of sovereign immunity when there were genuine issues of material fact in dispute. He further claims that Gordon does not share joint tort-feasor status with the District, making a reduction of any ultimate recovery unwarranted.

### 1. SUMMARY JUDGMENT

Summary judgment is authorized only when the movant is entitled to judgment as a matter of law because there are no genuine issues of material fact. SDCL 15–6–56(c); *Trapp v. Madera Pacific, Inc.*, 390 N.W.2d 558, 564 (S.D.1986) *citing Nemec v. Deering*, 350 N.W.2d 53, 55 (S.D.1984); *Caneva v. Miners and Merchants Bank*, 335 N.W.2d 339, 341 (S.D.1983). The burden is

on the moving party to clearly show that there is no genuine issue of material fact, and the evidence must be viewed most favorably to the nonmoving party; thus, reasonable doubts should be resolved against the moving party. The remedy is extreme and it is not intended as a substitute for a trial. *Trapp*, 390 N.W.2d at 562; *Wilson v. Great Northern Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968). When no genuine issue of material fact exists in a case, the legal questions may be properly decided by summary judgment. *Hamaker v. Kenwel-Jackson Mach., Inc.*, 387 N.W.2d 515 (S.D.1986). *See also* SDCL 15-6-56(c). Therefore, we affirm only if there are no genuine issues of material fact and the legal questions have been correctly decided. *Trapp, supra.* Here, the trial court was confronted with mixed questions of fact and law. Therefore, summary judgment was improper except as to the District.

## 2. LIABILITY OF THE SCHOOL DISTRICT

The doctrine of sovereign immunity has its genesis in the English common law; thus the sovereign, like the king of old, can do no wrong and there being no wrong, there is nothing to be addressed. *See Conway v. Humbert*, 82 S.D. 317, 324, 145 N.W.2d 524, 528 (1966). Despite substantial criticism,[1] the doctrine has become firmly imbedded in the common law of this state. The doctrine predates the federal and state constitutions. *High-Grade Oil Co., Inc. v. Sommer*, 295 N.W.2d 736, 738 (S.D.1980).

■ The South Dakota Constitution recognized the doctrine when it provided in Article III, § 27 that "[t]he Legislature shall direct by law in what manner and in what courts suits may be brought against the state." The legislature, within constitutional limitations, has control over the liability to which the state and its governmental subdivisions and agencies may be subjected for tort. *Conway*, 82 S.D. at 322, 145 N.W.2d at 527. "The people express their sovereign will in the formulation of public policy and law through the medium of the legislature and that branch of government in this field should be permitted to function freely without judicial interference." *Id.*, 82 S.D. at 324, 145 N.W.2d at 529; *High-Grade Oil*, 295 N.W.2d at 738. Therefore, in the absence of legislative enactment the state is immune from liability in tort.

In *Merrill v. Birhanzel*, 310 N.W.2d 522 (S.D.1981), a student who was injured in a required physical education class brought suit against the school district and two supervising teachers to recover for his injuries. The trial court granted summary judgment to the district and teachers.[2] In affirming this decision, we wrote:

It is settled law in this State that: 'School districts are state agencies exercising and wielding a distributive portion of the sovereign power of the state, and the officers of school districts are the living agencies through whom the sovereign state act is carried into effect. A school district officer in the performance of his duties acts in a political capacity, as much so as the Governor of a state, and is not liable for negligent acts of omission occurring in the performance of such political or public duties, unless the sovereign power of the state has authorized and consented to a suit for such negligence.'

*Id., quoting Plumbing Supply Co. v. Board of Education, Etc.*, 32 S.D. 270, 272–273, 142 N.W. 1131, 1132 (1913).

The appellant in *Merrill* argued that by purchasing liability insurance as authorized

---

**1.** *See Conway*, 82 S.D. at 324, 145 N.W.2d at 529; Comment, *Sovereign Immunity And The South Dakota Plaintiff: A Practical Approach*, 26 S.D. L.Rev. 300 (1981); Comment, *An Analysis Of South Dakota's Sovereign Immunity Law: Governmental v. Official Immunity*, 28 S.D.L.Rev. 317 (1983).

**2.** Footnote one of Justice Fosheim's opinion points out that "[t]he allegations against the defendants Birhanzel and Biehl do not claim personal liability for any wrongful acts in excess of their official authority." *Merrill*, 310 N.W.2d at 523, n. 1.

by statute,[3] the school district waived immunity. 310 N.W.2d at 523. We stated:

> The problem we have with appellant's contention is that school districts ... are not a governmental unit below the state level whose traditional immunity had been statutorily waived at the time of this injury. No permission to sue the defendants in tort on this type of action had then been granted by the legislature.... [citations omitted] Authority to purchase, and the purchase of liability insurance does not provide that permission.

*Id.*

In summary, school districts, as state agencies, enjoy sovereign immunity from tort liability absent an express consent from the legislature. S.D. Const. art. III, § 27; *High-Grade Oil*, 295 N.W.2d at 738. No express legislative consent has been given to expose the District to tort liability. "We have consistently held that if there is to be a departure from the immunity rule, the policy must be declared and the extent of liability fixed by the legislature." *Merrill*, 310 N.W.2d at 524. Accordingly, we affirm summary judgment for the District.

### 3. LIABILITY OF SCHOOL DISTRICT EMPLOYEES

In *High-Grade Oil, supra*, we characterized Article III, § 27, as recognition of the doctrine of sovereign immunity. In *Oien v. City of Sioux Falls*, 393 N.W.2d 286 (S.D.1986), we considered the doctrine in conjunction with Article VI, § 20, the "open courts" provision of the South Dakota Constitution.[4] *Id.* at 290. In *Oien*, we interpreted the "open courts" provision as " 'a guarantee that "for such wrongs as are recognized by the law of the land the courts shall be open and afford a remedy." ' " *Id., quoting Simons v. Kidd*, 73

S.D. 41, 46, 38 N.W.2d 883, 886 (1949). We wrote:

> That is to say, where a cause of action is implied or exists at common law without statutory abrogation, a plaintiff has a right to litigate and the courts will fashion a remedy.

*Id.*

The common law recognizes that merely being an agent or employee does not alter the duties otherwise owed to third parties. *See, e.g., Kelly v. State*, 265 Ark. 337, 578 S.W.2d 566 (1976); *Montanick v. McMillin*, 225 Iowa 442, 280 N.W. 608 (1938); *E.H. Emery & Co. v. American Refrigerator Transit Co.*, 193 Iowa 93, 184 N.W. 750 (1921); *Delaney v. Rochereau*, 34 La.Ann. 1123, 44 Am.Rep. 456 (1882). In *Kelly*, the court stated:

> Everyone, whether he is principal or agent, is responsible directly to persons injured by his own negligence in fulfilling obligations resting upon him in his individual character and which the law imposes upon him, independent of contract. No man increases or diminishes his obligations to strangers by becoming an agent. If, in the course of his agency, he comes in contact with the person or property of a stranger, he is liable for any injury he may do to either, by his negligence, in respect to duties imposed by law upon him in common with all other men.

578 S.W.2d at 567, *quoting Montanick* and *Delaney, supra.*

South Dakota has codified a similar statement of the law of negligence in SDCL 20–9–1 which provides in part, "[e]very person is responsible for injury to the person, property, or rights of another caused by his willful acts or caused by his want of ordinary care or skill[.]" The fact of agency does not change this rule. In *Kelly, supra*, the Supreme Court of Arkan-

---

**3.** *See* SDCL §§ 13–8–39 and 13–10–9.

**4.** S.D. Const. art. VI § 20 provides: "All courts shall be open, and every man for an injury done him in his property, person or reputation, shall have remedy by due course of law, and right and justice, administered without denial or delay."

sas justified the imposition of personal liability upon a state official in light of the above quoted passage, despite recognition of the doctrine of sovereign immunity contained in the Arkansas Constitution.[5] 578 S.W.2d at 567.

Although the state, as sovereign, is immune from suit in state courts without legislative consent, *Kruger v. Wilson*, 325 N.W.2d 851, 852 (S.D.1982), *citing Conway, supra*, the liability of a state employee for his own negligent or intentional acts is another matter. "Every person is responsible for injury to the person, property, or rights of another caused by his willful acts or ... want of ordinary care[.]" SDCL 20-9-1. The remedy provided by common law and by this statute is supported not only by the "open courts" provision but by other substantial constitutional provisions.[6]

■ In considering these common law principles in light of all of these authorities and constitutional provisions (including Article III, § 27), we find that the state's sovereign immunity does not extend to a state employee unless (1) the action is really one against the state and the employee is sued in his representative capacity only, or (2) the employee is engaged in the performance of a discretionary function.

*High-Grade Oil, supra; National Bank of South Dakota v. Leir*, 325 N.W.2d 845 (S.D.1982); *Kruger, supra.*

■ In *High-Grade Oil*, the plaintiffs brought suit against the Director and State Highway Engineer of the Division of Highways in his individual capacity, for the allegedly negligent design and construction of a highway "S" curve upon which a collision occurred. We held that where a judgment nominally against an employee could operate to subject the State to liability, the suit is deemed to be against the State and is barred by immunity.[7] 295 N.W.2d at 737. A suit against an employee in his representative or official capacity which does not assert personal negligence is barred by immunity. *Kruger*, 325 N.W.2d at 853. In analyzing whether an employee is sued in his representative or official capacity the pleadings may be considered to determine whether they assert wrongful acts in excess of the employee's official authority. *See Merrill*, 310 N.W.2d at 523, n. 1; *Smith v. Greek*, 328 N.W.2d 261, 263 (S.D.1982).

As mentioned before, whether immunity extends to an employee sued in his individual capacity depends on the function performed by the employee. *National Bank,*

---

5. In *Kelly*, the state official argued that as a state trooper and officer of the State of Arkansas, he could not be sued for damages which resulted from an automobile collision with his state trooper car, in reliance on Ark. Const. art. 5, § 20 which provides, "[t]he State of Arkansas shall never be made defendant in any of her courts." 578 S.W.2d at 566. The court said:
    When considered in connection with what constitutes an action against the State, [having distinguished actions where the state is the real party against which relief is sought] we have concluded that a negligence action for personal injuries brought against a state trooper for a violation of duty imposed upon him by law in common with all other people using the highways does not amount to an action against the State within the prohibition of Ark. Const. Art. 5 § 20.
    *Id.* at 567. This decision imposed personal liability upon a state official even though Arkansas' constitutional immunity provision is more restrictive than South Dakota's (*see* S.D. Const. art. III, § 27).

6. S.D. Const. art. VI provides in part:

§ 1. *Inherent rights.* All men have certain inherent rights including enjoying and defending life and liberty, acquiring and protecting property and the pursuit of happiness.

§ 2. *Due Process.* No person shall be deprived of life, liberty, or property without due process of law.

§ 12. *Privilege or immunity laws.* No law granting an irrevocable privilege, franchise or immunity shall be passed.

§ 18. *Equal privileges or immunities.* "No law shall be passed granting to any citizen, class of citizens or corporation, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations."

7. The apparent rationale for this holding is that a decision adverse to the engineer would require the State, (through the Department of Transportation), to alter the curve, placing a financial burden upon the State and thereby subjecting it to liability. *See* 28 S.D.L.Rev. at 324, *supra* n. 1.

325 N.W.2d at 848; *Sioux Falls Const. Co.,* 297 N.W.2d at 458. Immunity extends to an employee who, while acting within the scope of his employment, exercises a discretionary function. *Id.* "In reviewing the discretionary versus ministerial dichotomy, we have held that a state employee who 'fails to perform a merely ministerial duty, is liable for the proximate results of his failure to any person to whom he owes performance of such duty.'" *National Bank,* 325 N.W.2d at 848, *quoting State v. Ruth,* 9 S.D. 84, 90, 68 N.W. 189, 190 (1896).

In *National Bank* and *Kruger,* this court used the factors set forth in the Restatement (Second) of Torts, § 895D, comment f (1979),[8] to distinguish between discretionary and ministerial functions. *National Bank* held that the doctrine of sovereign immunity did not extend to preclude a suit against two social workers for the allegedly negligent placement and supervision of two minor children in foster care. 325 N.W.2d at 849–850. We wrote:

> Although some discretion in its literal sense is involved in foster care, social workers do not make policy decisions involving foster care placement. The criteria for placement and standards for follow-up of foster children are already established. Social workers are merely required to carry out or administer these previously established standards. The placement and follow-up of children in foster care according to preestablished standards is a routine, ministerial function. (citations omitted).

*Id.* at 850.

Similarly, in *Kruger,* we held that an employee of the state Department of Social Services, who was sued individually for her negligent driving, was not protected by official immunity since her actions in driving a state vehicle on state business were ministerial in nature, and not discretionary. 325 N.W.2d at 854. In applying the Restatement factors we said:

> The case is built on [employee's] responsibility to those she individually contacts. It neither arises from an important discretionary function, such as designing a highway [*High-Grade Oil Co., supra* ], nor would imposing liability impair [employee's] job discretion. The likelihood of harm to the public depends on [employee], not on departmental authorization of her trip. Presumably, an adverse decision would cause [employee] to be more careful of her driving habit in the future, but would not impact the employer.

*Id.* We reversed the trial court's extension of official immunity to the state employees involved in *Smith, supra,* (Department of Transportation engineers) and *Kringen v. Shea,* 333 N.W.2d 445, 446 (S.D.1983) (state college gymnastic instructor), in light of the *National Bank* and *Kruger* decisions.

Former Chief Justice Fosheim vigorously dissented in both the *National Bank* and *Kruger* cases. In both instances, he stated that the holding in *High-Grade Oil* was squarely based upon the traditional rule that a governmental employee is protected by the doctrine while performing his duties. In criticizing *Sioux Falls Const. Co.'s* discretionary test as vague, and open to manipulation to obtain a desired result, he stated:

> Prior to *Sioux Falls Construction* this court applied a simple, straight-forward

---

8. These factors include:
   1. The nature and importance of the function that the officer is performing....
   2. The extent to which passing judgment on the exercise of discretion by the officer will amount necessarily to passing judgment by the court on the conduct of a coordinate branch of government....
   3. The extent to which the imposition of liability would impair the free exercise of his discretion by the officer....
   4. The extent to which the ultimate financial responsibility will fall on the officer....
   5. The likelihood that harm will result to members of the public if the action is taken....
   6. The nature and seriousness of the type of harm that may be produced....
   7. The availability to the injured party of other remedies and other forms of relief.

test to determine if the doctrine applied—was the employee acting within the scope of his employment when the injury occurred? Aside from its simplicity, this test treats all governmental employees the same, regardless of their position and earnings. The discretionary test will, in my opinion, lead this court into a quagmire and allow personal liability actions against those least able to pay.

*National Bank,* 325 N.W.2d at 851 (C.J. Fosheim dissenting); *Kruger,* 325 N.W.2d at 856 (C.J. Fosheim dissenting). While we respect this viewpoint and appreciate the reasoning expressed therein, we believe this argument is best advanced *against* sovereign immunity, rather than to eliminate the minimal rights and remedies injured parties retain against wrongdoers who happen to work for the state.

Within constitutional limitations, the legislature is empowered to control the liability to which the state and its agencies may be subjected for tort. *Conway,* 82 S.D. at 322, 145 N.W.2d at 527. However, recent legislative enactments [9] suggest an abrogation of the discretionary/ministerial distinction contrary to *Sioux Falls Const. Co., National Bank,* and *Kruger,* (*see* SDCL §§ 21–32–17 and 21–32A–2), and the governmental/proprietary distinction that affects cities and municipal corporations (*see* SDCL 21–32A–3) as advanced by a long line

of cases which include *Oien, Conway, supra,* and *Bucholz v. City of Sioux Falls,* 77 S.D. 322, 91 N.W.2d 606 (1958). *Oien* held the extension of sovereign immunity beyond the traditional bounds to be unconstitutional under the "open courts" provision of the South Dakota Constitution. *See* S.D. Const. art. VI, § 20. *Id.* at 290. We do not reach the constitutionality of these statutes because they were enacted subsequent to the facts of this case.

■ The trial court found that District employees Peterson (the principal) and Aman (the school superintendent), enjoyed official immunity from suit. In his complaint, Bego alleged that Peterson acted in concert with Gordon in effecting the unlawful detention which caused him to suffer emotional distress. He further alleged that Aman wrongfully detained, assaulted, and defamed him. The pleadings allege personal negligence against Peterson and Aman, respectively, despite the fact that they were sued jointly with the District. The record shows that Bego's claims are not against the state and that they were asserted against Peterson and Aman individually. A school district official who commits an intentional tort or acts ultra vires exceeds the scope of his official authority and will not be shielded by immunity.[10] *Schornack v. School Dist. No. 17–2 of Brown County,* 64 S.D. 215 at 217, 266

---

9. SDCL 21–32–17 provides:
**Immunity of state officers, employees and agents.** Except as provided in § 21–32–16, any employee, officer or agent of the state, while acting within the scope of his employment or agency, whether such acts are ministerial or discretionary, is immune from suit or liability for damages brought against him in either his individual or official capacity.
SDCL 21–32A–2 provides:
**Immunity of employees, officers or agents—affirmative defense.** Except insofar as insurance is purchased pursuant to § 21–32A–1, any employee, officer or agent of the public entity, while acting within the scope of his employment or agency, whether such acts are ministerial or discretionary, is immune from suit or liability for damages brought against him in either his individual or official capacity. The immunity recognized herein may be raised by way of affirmative defense.

SDCL 21–32A–3 provides:
**Immunity of public entities—affirmative defense.** Except insofar as insurance is purchased pursuant to § 21–32A–1, any public entity is immune from liability for damages whether the function in which it is involved is governmental or proprietary. The immunity recognized herein may be raised by way of affirmative defense.

10. When acting in a quasi-judicial or discretionary matter, a public officer or employee is usually given immunity from liability to persons who may be injured as the result of an erroneous or mistaken decision, however erroneous his judgment may be, provided the acts complained of are done within the scope of the officer's authority, the officer is acting in good faith, and without willfulness, malice, corruption, or oppression in office. *Thus, absent civil rights complaints, acts done in bad faith, intentional torts, or false imprisonment, where the employee is performing discretionary acts which*

N.W. 141 at 142. Based on the foregoing authorities and for the reasons stated below, we hold that the trial court erred in extending official immunity to Peterson and Aman.

### Incident # 1.

■ It was Peterson's responsibility to try to resolve a matter of concern to a parent, Gordon, by having him meet with Bego in the principal's office. According to Peterson's testimony, Bego did not ask to leave his office during the meeting nor did Peterson in any way prevent Bego from doing so. Peterson testified that he remained seated behind his desk. He also stated that the discussion between Gordon and Bego became heated, and that Gordon threatened to assault Bego. Bego testified that his problems with Gordon were long-standing. Bego claimed that Peterson and Gordon acted in concert in that Gordon poked, shoved, and threatened Bego with his fist and that Peterson took no affirmative steps to prevent this activity. Bego admitted, however, that Peterson never expressly told him that he could not leave the office, nor blocked the doorway or indicated through his conduct that Bego was not free to go.

These brief facts, taken in a light most favorable to Bego, may constitute acts in excess of Peterson's official authority or false imprisonment. *See* Restatement (Second) of Torts § 895D(3)(a)(b) and (c) (1977) [11] and §§ 35, 36 (1965). Accordingly, even though it appears that Peterson was acting within the scope of his employment when he attended this meeting with Gordon and Bego, and even though it appears that he was engaged in the exercise of a discre-tionary function, which are questions for the court, it may be necessary for the jury to first determine whether the intentional tort of false imprisonment occurred. If Peterson committed an intentional tort in concert with Gordon he may lose any immunity or privilege otherwise available. 63A Am.Jur.2d § 362, *supra*, note 10. Therefore, the trial court erred in granting summary judgment as to incident # 1.

### Incident # 2.

During the 1980/81 school year, Aman was assigned the responsibility of evaluating Bego in accordance with the District's policies and procedures. According to Aman's testimony, he called Bego into his office on February 27, 1981, for the purpose of their joint review of Bego's professional evaluation, pursuant to school policy. Aman stated that Bego refused to review or sign the evaluation. Thereafter, Aman requested his secretary to prepare a verification copy which would indicate Bego's refusal to sign. According to Aman, Bego then acquiesced by signing the evaluation and left the office.

Bego testified that the February meeting with Aman lasted approximately ten minutes. He stated that Aman blocked the doorway of his office and told Bego that he could not leave until he signed. Bego further claimed that Aman pushed him, although he stated that he also tried to push Aman out of the doorway. Bego admitted that he sustained no physical injuries during this encounter but stated that he suffered emotional distress.

Aman denied blocking the doorway of his office or pushing Bego. Aman's secretary testified that during the February meeting

---

*are not in excess of authority and are within the scope thereof, the officer will not be liable for the manner in which the discretion is exercised.* Official immunity must be narrowly construed in light of the fact that it is an exception to the general rule of liability. (emphasis added) 63A Am.Jur.2d § 362, at 929–930 (1984).

11. § 895D(3) provides as follows:
　　A public officer acting within the general scope of his authority is not subject to tort liability for an administrative act or omission if
　　(a) he is immune because engaged in the exercise of a discretionary function,
　　(b) he is privileged and does not exceed or abuse the privilege, or
　　(c) his conduct was not tortious because he was not negligent in the performance of his responsibility.

she observed that both Aman and Bego were upset. However, she stated that she did not see Bego attempt or request to leave Aman's office, nor did she observe Aman blocking the doorway.

■ As indicated above, these brief facts must be taken in a light most favorable to Bego for summary judgment purposes. *Trapp; Wilson; supra.* Comment e to § 895D notes that courts, in discerning the immunity available to public officers, have gone on the assumption that if the function in which the officer is engaged is characterized as discretionary, an immunity from tort liability applies and he is not liable. When acting in a discretionary matter, a public officer is usually given immunity from liability so long as the acts complained of are done within the scope of the officer's authority, in good faith, and without willfulness or malice. 63A Am.Jur.2d § 362, *supra* note 10.

■ Although the evidence before us suggests that it was within the general scope of Aman's authority to have Bego sign the evaluation in accordance with school policy, the facts must be taken in the light most favorable to Bego. In addition, whether Aman's conduct was discretionary or ministerial under the *Kruger* and *National Bank* decisions, which is a question for the court, and whether his actions constituted battery or false imprisonment, which are jury questions and for which there is generally no immunity available, *Schornack* and *Layton, supra,* should be determined upon a more fully developed record. Accordingly, it was error for the trial court to grant summary judgment as to incident #2.

### Incident #3.

The allegations that Aman defamed Bego arose from Aman's observance of Bego's music class during school hours in April of 1981. According to Bego's testimony, Aman remarked in front of the students that Bego didn't care whether the students learned or not, as long as he collected his paycheck. Aman denied making any such statement and claimed he was concerned about the noise and disturbance, and was attempting to promote discipline. Bego conceded that his interpretation of the purported defamatory remark was his only, and not necessarily the only interpretation possible.

Two of Bego's students corroborated his testimony. They stated that the incident occurred after Aman had observed part of their chorus class. Bego was not present at this time but all twenty-four students were gathered in the classroom. According to the students' testimony, Aman went to the front of the room and told them they were "goofing around" too much. He remarked that the girls in the class were "losers" and then made the comment about Bego. One student testified that she paid no attention to the comment and that it did not diminish Bego in her eyes. The other student stated that she did think less of Bego after the remark was made, but believed Bego was an "okay teacher" before and after the comment.

Considering these brief facts in a light most favorable to Bego, it is obvious that it was error to determine the following questions against Bego on this record: whether Aman's actions constituted: (1) acts outside the scope of his official authority, (2) privileged actions which did not exceed or abuse the privilege, or (3) defamation or slander under South Dakota law.[12]

Whether Aman was actually involved in the discretionary function of attempting to promote discipline or whether he was moti-

---

12. **SDCL 20–11–1. Obligation to refrain from defamation.** Every person is obligated to refrain from infringing upon the right of others not to be defamed.
   **SDCL 20–11–4. Slander defined.** Slander is a false and unprivileged publication, other than libel, which:

   .    .    .    .    .

   (3) Tends directly to injure him in respect to his office, profession, trade, or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profit; ... or

vated by a desire to harm or punish Bego for personal reasons is a matter upon which reasonable minds can differ. Aman's statement to the female students that they were "losers" adds to, rather than detracts from the controversy. The *National Bank* decision appears to limit "discretionary functions" to the making of basic policy decisions. 325 N.W.2d at 850. If Aman was actually engaged in a discretionary function when he made the purportedly defamatory remarks and his methods were merely below standard or ill advised, he is immune from liability. If, however, the "attempt to promote discipline" was a facade to cover for a personal desire to diminish Bego's professional reputation, then Aman is not immune because his actions ceased to serve a discretionary purpose and were ultra vires.

■■■■■ The determination of whether Aman was privileged and whether he exceeded or abused the privilege under section 895D(3)(b) [13] is similar to determining whether his communication was privileged under SDCL 20–11–5. In order to be privileged, a communication must be without

malice. If malice exists, the actions exceed the privilege or constitute an abuse thereof. *See, e.g., Konowitz v. Archway School Inc.*, 65 A.D.2d 752, 409 N.Y.S.2d 757 (1978); *Johnson v. Langley*, 247 Ky. 387, 57 S.W.2d 21 (1933); *Mulcahy v. Deitrick*, 39 Ohio App. 65, 176 N.E. 481 (1931). Accusations or statements, written or oral, imputing to a school teacher want of professional capacity are generally actionable per se. 50 Am.Jur.2d § 129, at 630 (1970). A teacher is not entirely exempt from criticism and many comments are designated as qualifiedly privileged [14] because of the public nature of the teaching profession. *Id.* at 631. This qualified or conditional privilege may be lost when the speaker, on an otherwise privileged occasion, publishes false and defamatory matter concerning another which either (a) he in fact does not believe to be true or (b) has no reasonable grounds for believing it to be true. *Gardner v. Hollifield*, 97 Idaho 607, 549 P.2d 266, 269 (1976). [15]

■■■■■ We conclude that Aman's remark characterizing Bego as interested only in his paycheck was conditionally and

---

(5) By natural consequence, causes actual damage.
**SDCL 20–11–5. Privileged communications—Malice not inferred from publication.** A privileged communication is one made:
    (1) In the proper discharge of an official duty;

    .    .    .    .    .

    (3) In a communication, without malice, to a person interested therein, by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information;
In [subdivision] 3 ... malice is not inferred from the communication or publication.

**13.** Under 895D(3)(b), a public officer acting within the general scope of his authority is not subject to tort liability for an administrative act or omission if (a), he is immune because he is engaged in the exercise of a discretionary function, or (b), he is privileged and does not exceed or abuse the privilege.

**14.** *See, e.g., Uken v. Sloat*, 296 N.W.2d 540, 542–543 (S.D.1980), which recognized the existence of a qualified privilege, made without malice, in

an action by a former superintendent of schools against certain school district patrons for alleged defamation and slander.

    A concise explanation of the distinction between absolute and conditional (qualified) privileges is found in the introductory note to Restatement (Second) of Torts § 585 at 160–161 (1974). Likewise, an explanation of privileges as they relate to school teachers is found in *Annot.* 40 A.L.R.3d 490 (1971).

**15.** In *Gardner,* a discharged teacher brought an action against the board of trustees of the school district and the district superintendent of schools alleging that the superintendent made false statements concerning the teacher's professional competence, that the superintendent knew his statements were false, and that the teacher was damaged thereby. The Supreme Court of Idaho held that genuine issues of material fact existed as to whether the superintendent knew that his statement concerning the teacher's incompetence was false which precluded summary judgment. In so holding, the court pointed out that the superintendent's privilege to make defamatory statements in the performance of official duties was only a conditional privilege. 549 P.2d at 269.

not absolutely privileged. There is testimony that Aman made a slanderous statement concerning Bego's competence as a teacher, that it was not made in good faith, and that Bego's reputation was damaged thereby. This testimony, if true, does not fall within the ambit of conditional privilege. Whether Aman defamed Bego under South Dakota law, and whether Aman is immune because he was engaged in a discretionary function or did not exceed or abuse his privilege were not appropriate questions for summary disposition on this record. Whether a tort was committed is a question of fact for the jury. Questions concerning scope of authority, discretionary or ministerial functions, privilege and abuse of privilege are for the court. Because many of these questions include mixed questions of law and fact, we encourage the development of a full record prior to their determination. Accordingly, it was error for the trial court to grant summary judgment on incident # 3.

4. ANY RECOVERY BY BEGO AGAINST GORDON, PETERSON, AND AMAN SHOULD NOT BE REDUCED BY THE AMOUNT OF SETTLEMENT WITH THE SCHOOL DISTRICT.

■ In a letter to all counsel dated November 26, 1985, the trial court stated:

[I]t appears that [Gordon] is sued as a joint tort-feasor and the claim of the plaintiff against Gordon must be reduced by the consideration paid by the District under SDCL 15–8–17.[16]

This ruling was incorporated into the trial court's order of January 13, 1986.

Bego claims that Gordon's allegedly tortious conduct occurred in September 1980, while the termination did not occur until some five or six months later. He further contends that joint tort-feasor status

should be ruled out in relation to Gordon, a private citizen, who had no standing to benefit from the District's settlement of a contract matter for wrongful termination of employment.

Notice of termination was given to Bego in early 1981. Incident # 1 concerning Gordon and Peterson occurred in September of 1980. Incident # 2 concerning Aman occurred on February 27, 1981, and incident # 3 occurred in April 1981. The settlement agreement executed between Bego and the District in October 1981, provided that Bego would accept $12,890 in full satisfaction of all "physical, mental and emotional disturbances and injuries which he has incurred as a result of the over-all situation which is the subject matter of this Stipulation." The "subject matter" of the stipulation included Bego's employment and pending termination by the District. In this light, it is interesting to note that the amount of the settlement of $12,890 was exactly the same as Bego's salary for one year as a tenured teacher.

SDCL 15–8–11 defines "joint tort-feasors" as "two or more persons jointly or severally liable in tort for the same injury[.]" As stated in *Burmeister v. Youngstrom*, 81 S.D. 578, 139 N.W.2d 226 (1965):

We believe it abundantly clear that the right to contribution is determined by whether there is joint or several liability rather than by the presence of joint or concurring negligence. There can be no right to contribution unless the injured party has a possible remedy against two or more persons.

*Id.*, 81 S.D. at 586, 139 N.W.2d at 231; *Beck v. Wessel*, 90 S.D. 107, 112, 237 N.W.2d 905, 908 (1976).

In *Schick v. Rodenburg*, 397 N.W.2d 464 (S.D.1986), we held that nonsettling defendants were entitled to credit for the greater of the amount of settlement or the settling

16. SDCL 15–8–17 provides:
A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides; but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.

defendant's percentage of liability as ultimately determined, regardless of whether or not the settling defendant was later determined to be a joint tort-feasor. *Id.* at 470. However, that rule assumes that the injured party has a possible remedy against the settling defendant as a joint tort-feasor. Any liability on the part of the District here would arise from contract and not from tort. Since the District has no tort liability to Bego under South Dakota law, Bego has no possible remedy against the District as a settling defendant. Therefore, the District is not a joint tort-feasor under SDCL 15–8–11 for the purposes of SDCL ch. 15–8. Accordingly, we hold that any recovery obtained by Bego against Gordon, Peterson, and Aman should not be reduced by the amount of settlement with the District.

The judgment is affirmed as to the District in all respects. The judgment is reversed and remanded as to Peterson and Aman. Finally, we reverse and hold that any recovery by Bego should not be reduced by the amount of settlement.

WUEST, C.J., and MORGAN, J., concur.

HENDERSON, J., and FOSHEIM, Retired J., dissent.

MILLER, J., not having been a member of the court at the time this action was submitted to the court, did not participate.

HENDERSON, Justice (dissenting).

All defendants were entitled to summary judgment, as a matter of law.

School District is entitled to absolute sovereign immunity in tort actions within this state. *Holland v. Yankton Sch. Dist.*, 375 N.W.2d 199 (S.D.1985).

Peterson and Aman were both school administrators, acting for School District, and enjoyed sovereign immunity protection in their decisions and actions in the school-house. *Holland*, 375 N.W.2d 199; *Guillaume v. Staum*, 328 N.W.2d 259 (S.D. 1982). *See also Merrill v. Birhanzel*, 310 N.W.2d 522 (S.D.1981). Were this not jurisprudentially true, both would still be immune based upon exercise of discretionary function of their respective responsibilities.

School districts occupy a unique classification. They are state agencies. *Holland*, 375 N.W.2d at 199. Administrators are necessarily clothed with discretion to maintain order, supervise teachers, and to generally carry out the policy of the school board. Daily, they superintend the operation of a school. If they become subject to lawsuits for their daily decisions, it will have a chilling effect on employing qualified administrators in South Dakota, and will subject them to personal liability for simply attempting to make a schoolhouse run in an efficient manner. Administrators are involved in policy, every day, and we, in the law, cannot infect their decisions with a daily fear of litigation. While acting in the performance of their duties, they should not be subjected to litigation for exercising their duties/judgment, on a day-by-day basis, to run the affairs which attend school administration. Decisions by school administrators to correct bad situations must be made on the spot, they cannot wait for the school board to caucus and formulate a policy or have a special school board meeting. Administrators are vested with discretionary powers in order that they may address matters which require immediate attention. School board members come from every walk of life and have their own occupations and family needs to attend to and cannot be summoned to caucus on a child who is causing trouble in school or a teacher who is failing his students and the school by improper conduct or teaching methods. Their immunity must be viewed in this light: What is the nature of their function? *Sioux Falls Constr. Co. v. City of Sioux Falls*, 297 N.W.2d 454, 458 (S.D. 1980).

Bego could have walked out of Peterson's office at any time; this is hardly

814

imprisonment.[1] Bego admitted, at proceedings below, that Peterson did not restrict his freedom (from whence could arise a question of fact on false imprisonment?); as for being "detained" or "emotionally distressed" in the superintendent's office, Bego had a duty to review and/or sign the evaluation and leave, but his obstreperousness created a verbal confrontation; it appears Bego visited upon himself—emotional distress—when all he had to do was sign the evaluation and walk out (therefore, no material issue of fact). As for alleged defamation, this supposedly occurred in a music room, during class, and Aman apparently disapproved of the students' frivolous conduct and Bego's instruction. True, Aman's reproach was not tactful, but this is hardly an underpinning for a suit at law for damages.[2] Under the majority opinion's Am.Jur.2d cite, I fail to perceive a question of fact on willfulness or malice. Therefore, other than the immunity issue, which I have touched upon, concerning

school administrators, it does not appear to be a question of fact under a theory of intentional tort. Actually, under my theory, this concept need not be reached. And I mention it only because it would appear that there is a far-reaching consequence to the majority holding and, vividly, in my opinion, demonstrates to what end the basic tenet of the majority opinion may reach; yes, right into the music room for a lawsuit and that is a revolutionary overturning of precedent in this Court. *See Merrill v. Birhanzel,* 310 N.W.2d 522 (S.D.1981) (where sovereign immunity was applied to shield two teachers from a lawsuit involving a student injury suffered in a physical education class), relying on *Plumbing Supply Co. v. Board of Educ.,* 32 S.D. 270, 272–73, 142 N.W. 1131, 1132 (1913).

FOSHEIM, Retired Justice (dissenting).

The majority opinion appropriately relies on *Merrill v. Birhanzel,* 310 N.W.2d 522 (S.D.1981), for the proposition that school

---

**1.** Currently, a debate rages. Some courts assert that the victim be conscious of the confinement. The more modern view allows recovery even where the victim was not cognizant of the confinement. 1 F. Harper, F. James and O. Gray, *The Law of Torts* § 3.6, at 286 (2d ed. 1986). However, it is universally recognized that the victim must have been confined and "the most authoritative modern view is that the plaintiff must be completely confined and any reasonable means of egress known to him will prevent an imprisonment." *Id.,* § 3.7, at 289 (footnote omitted). *See Prosser and Keeton on The Law of Torts* § 11, at 47–49 (5th ed. W. Keeton 1984). As Prosser notes: "It is essential, however, that the restraint be against the plaintiff's will; and if one agrees of one's own free choice to surrender freedom of motion, as by remaining in a room or accompanying another voluntarily, to clear oneself of suspicion or to accommodate the desires of the other, rather than yielding to the constraint of a threat, then there is no imprisonment." Prosser, *id.,* § 11, at 49 (footnotes omitted). In our case, Bego had before him, in plain view, an open door. Additionally, the facts are clear that Peterson never indicated to Bego that the latter must remain in the office and if Bego did remain, he apparently did so for personal reasons, and not against his will.

**2.** The subject of "qualified privilege" was fully addressed by this writer in an unanimous opinion in *Uken v. Sloat,* 296 N.W.2d 540, 542–43 (S.D.1980). Surely, a superintendent may make criticism and comments concerning teachers

under his command, be it to his staff, the school board, the teacher itself, or correcting a teacher in front of his/her students without fear of reprisal of a lawsuit. When a teacher permits frivolity or "goofing around," and a superintendent steps in to correct it, this is the kind of superintendent we need in South Dakota schools. Again, Aman could have been more tactful and perhaps call the teacher aside and chastise him rather than to rebuke him to the students and while the teacher was temporarily absent. Malice should not be inferred from such a classroom situation. Aman was entitled to summary judgment on the defamation cause of action based upon SDCL 20–11–5. Teachers are not exempt from criticism because of the public nature of the teaching profession. In making this remark to these students, Aman was acting in a discretionary function. If Aman did nothing, he was answerable to his board for neglecting his duties; if he did do something to correct, on the spot, a bad situation, he ends up as a defendant in a lawsuit. Aman was neither diplomatic nor tactful, but he did have the fortitude to rectify and amend. If his words were too harsh, one might consider them as punishment, in a sense, in front of the class. To ameliorate the situation, Aman could have rectified the situation by speaking to the teacher, rather than to the class. However, administrative posts in high school settings are stressful and classroom settings require spontaneous action.

districts, as state agencies, enjoy sovereign immunity from tort liability absent an express consent from the legislature. In that case, immunity was also extended to teachers Birhanzel and Biehl since they were acting within their official authority.

On the issue of the school employees liability, the majority then seemingly repudiates the very language it quoted with approval concerning the liability of the school district. "A school district officer in the performance of his duties acts in a political capacity, as much so as the Governor of a state, and is not liable for negligent acts of omission occurring in the performance of such political or public duties, unless the sovereign power of the state has authorized and consented to a suit for such negligence." That quote simply reaffirms the time-honored rule that immunity applies to an employee acting within the scope of his employment. As in *Birhanzel,* Peterson and Aman were employees of the school district.

The majority, however, in their zeal to fashion a cause of action for negligence simply excludes ministerial acts from the scope of employment immunity. In other words, by following the rationale of *National Bank* and *Kruger* the majority circumvents by judicial fiat the exclusive constitutional prerogative of the legislature to make inroads into the sovereign immunity doctrine.