#23601-a-LOVRIEN, Circuit Judge
**2006 SD 72**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

| | |
|---|---|
| DAKOTA, MINNESOTA & EASTERN<br>RAILROAD CORPORATION | Plaintiff and Appellee, |
| v. | |
| ACUITY, a Mutual Insurance Co.<br>f/k/a HERITAGE MUTUAL INSURANCE<br>COMPANY, d/b/a HERITAGE INSURANCE, | Defendant and Appellant. |

* * * *

APPEAL FROM THE CIRCUIT COURT

OF THE THIRD JUDICIAL CIRCUIT

BEADLE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE ROBERT L. TIMM
Judge

* * * *

| | |
|---|---|
| BRIAN J. DONAHOE and<br>MEREDITH A. MOORE of<br>Cutler & Donahoe<br>Sioux Falls, South Dakota | Attorneys for plaintiff<br>and appellee. |
| GARY P. THIMSEN and<br>JENNIFER L. WOLLMAN of<br>Woods, Fuller, Shultz & Smith<br>Sioux Falls, South Dakota | Attorneys for defendant<br>and appellant. |

* * * *

ARGUED MARCH 21, 2006

OPINION FILED 8/9/06

#23601

LOVRIEN, Circuit Judge

[¶1.]     Dakota, Minnesota and Eastern Railroad (DM&E) sued its automobile insurance company, Acuity, alleging that the negligence of an unidentified and uninsured motorist caused an accident involving a vehicle driven by DM&E employee Julian Olson (Olson) and that the business automobile policy issued by Acuity to DM&E covered the loss.  A Beadle County jury found for DM&E and the trial court entered judgment accordingly.  We affirm.

FACTS AND PROCEDURE

[¶2.]     On July 28, 1998, DM&E employee Olson was operating a motor vehicle within the scope of his employment on I-90 near Rapid City.  Olson was involved in a serious rollover accident which rendered him a paraplegic.  DM&E held a business automobile policy with Acuity which was in effect on the day of Olson's accident.

[¶3.]     Olson brought suit against DM&E under the Federal Employer's Liability Act, 45 USC § 51 *et seq* (FELA), for negligent maintenance of the vehicle's Hy-Rail System.[1]  DM&E tendered defense of the suit to Acuity.  Acuity refused.  The case went to trial.  On the last day of trial, before the jury reached a verdict, a settlement was reached between Olson and DM&E.

[¶4.]     DM&E then brought a declaratory judgment action against Acuity to determine whether Acuity was obligated to defend and provide coverage for Olson's FELA action against DM&E.  Acuity claimed that coverage was barred due to valid policy exclusions.  The trial court agreed and granted summary judgment in favor of Acuity.  It concluded that the employee indemnification and employer's liability

---

1.     The Hy-Rail System is equipment that when attached to a motor vehicle allows the vehicle to be driven on either railroad tracks or the public roadway.

exclusion in the policy barred coverage for Olson's accident. We affirmed the trial court's grant of summary judgment in DM&E v. Heritage Mut. Ins. Co., 2002 SD 7, 639 NW2d 513 (*DM&E I).*

[¶5.] During the pendency of *DM&E I*, Olson brought a products liability suit against the manufacturer of the Hy-Rail system. That lawsuit was settled in April 2003. On July 26, 2001, also during the pendency of *DM&E I*, DM&E brought the present Uninsured Motorist (UM) action against Acuity. DM&E claimed the negligence of an unidentified and uninsured motorist was the cause of Olson's accident.

[¶6.] On November 21, 2001, Acuity moved to dismiss the present action based upon res judicata and collateral estoppel. Acuity also moved for summary judgment, claiming it had no obligation under the policy to pay uninsured motorist benefits to DM&E for injuries suffered by a DM&E employee. DM&E moved to hold the case in abeyance until this Court decided *DM&E I*. On February 28, 2002, after our decision in *DM&E I*, the trial court denied Acuity's motion to dismiss. In April 2002 Acuity filed an application for stay and petition for discretionary appeal. Both motions were denied. On February 3, 2004, the trial court dismissed Acuity's motion for summary judgment. In April 2004 Acuity filed a second application for stay and petition for discretionary appeal. These motions were denied on April 5, 2004.

[¶7.] On April 9, 2004, DM&E moved to amend its complaint to add a cause of action for bad faith. The motion was granted. Acuity moved to bifurcate the bad faith and UM claim. The motion to bifurcate was granted. After the trial court ruled on preliminary discovery motions in the bad faith matter, the parties agreed to suspend any further action on that claim until resolution of the UM claim.

[¶8.] The UM claim was tried on January 24-25, 2005, in Beadle County, Huron, South Dakota. The jury returned a verdict in favor of DM&E, finding an unidentified motorist negligently caused Olson's accident. An amended partial judgment was filed on February 15, 2005. Over Acuity's objection, DM&E sought and was granted prejudgment interest. Acuity moved for judgment notwithstanding the verdict and a new trial. Both motions were denied. Acuity filed its notice of appeal on April 6, 2005. While a number of issues were raised by Acuity on appeal, we conclude that only a few issues merit discussion.

ANALYSIS

ISSUE ONE

[¶9.] **Did the trial court err in failing to grant Acuity's motion to dismiss based upon res judicata and collateral estoppel?**

[¶10.] Acuity claims that *DM&E I* settled, or should have settled, all of the issues between the parties and that the trial court committed error when it refused to grant Acuity's motion to dismiss based upon the doctrines of res judicata and collateral estoppel. We affirm the trial court's decision to deny Acuity's motion to dismiss.

[¶11.] This Court's review of such motions is well settled. Our standard of review of a trial court's grant or denial of a motion to dismiss is the same as our review of a motion for summary judgment: is the pleader entitled to judgment as a matter of law. *See* Jensen Ranch, Inc. v. Marsden, 440 NW2d 762, 764 (SD 1989).

> Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." SDCL 15-6-56(c). We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly

-3-

> decided. Bego v. Gordon, 407 NW2d 801, 804 (SD 1987). All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. Morgan v. Baldwin, 450 NW2d 783, 785 (SD 1990). The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. Wilson v. Great Northern Ry. Co., 83 SD 207, 212, 157 NW2d 19, 21 (1968).

Holzer v. Dakota Speedway, Inc., 2000 SD 65, ¶8, 610 NW2d 787, 792 (citing Kimball Investment Land, Ltd. v. Chmela, 2000 SD 6, ¶7, 604 NW2d 289, 292 (citing Mattson v. Rachetto, 1999 SD 51, ¶8, 591 NW2d 814, 816-17 (quoting Estate of Shuck v. Perkins County, 1998 SD 32, ¶6, 577 NW2d 584, 586))). We make an independent review of the record and are not bound by the trial court's factual assessments in granting summary judgment. Spenner v. City of Sioux Falls, 1998 SD 56, ¶7, 580 NW2d 606, 609; Carpenter v. City of Belle Fourche, 2000 SD 55, ¶6, 609 NW2d 751, 756.

[¶12.]	Res judicata and collateral estoppel are two distinct doctrines. Nelson v. Hawkeye Ins. Co., 369 NW2d 379, 380 (SD 1985); Schell v. Walker, 305 NW2d 920, 922 (SD 1981). While these two doctrines are very similar in nature, they produce different results. *Schell*, 305 NW2d at 922.

[¶13.]	Collateral estoppel prevents relitigation of issues that were actually litigated in a prior proceeding. *Id.* It also precludes a party which

> successfully maintains a certain position in a legal proceeding . . . from later assuming a contrary position simply because that party's interests have changed, especially if the change works to the prejudice of one who acquiesced in the position formerly taken by that party.

Watertown Concrete Products, Inc. v. Foster, 2001 SD 79, ¶10, 630 NW2d 108, 112 (citing New Hampshire v. Maine, 532 US 742, 749, 121 SCt 1808, 149 LEd2d 968 (2001)). The purpose of collateral estoppel is to "protect the integrity of the judicial

#23601

process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire*, 532 US at 749-50. This Court has held that three elements must be satisfied in order to apply collateral estoppel: (1) the later position must be clearly inconsistent with the earlier one; (2) the earlier position was judicially accepted, creating the risk of inconsistent legal determinations; and (3) the party taking the inconsistent position would derive an unfair advantage or impose an unfair detriment to the opponent if not estopped. *Watertown Concrete Products*, 2001 SD 79, ¶12, 630 NW2d at 112.

[¶14.]     We conclude that the doctrine of collateral estoppel is inapplicable here. The uninsured motorist issue was not "actually litigated" in the prior proceeding, *DM&E I*. In addition, DM&E took no position in *DM&E I* that is clearly inconsistent with its position in this case. In both cases it maintained that Olson's accident was caused by something other than a malfunction of the Hy-Rail System equipment. The trial court did not err by refusing to grant Acuity's motion to dismiss based on the doctrine of collateral estoppel.[2]

[¶15.]     Res judicata prevents the relitigation of a claim or issue that was "actually litigated or which could have been properly raised." *Nelson*, 369 NW2d at 381; *see also* Keith v. Willers Truck Serv. Inc., 64 SD 274, 266 NW 256 (1936). Res judicata is founded upon two premises: "A person should not be twice vexed for the same cause and public policy is best served when litigation has a repose." Black Hills Mfg. Inc. v. Felco Jewel Ind., Inc., 336 NW2d 153, 157 (SD 1983). In *Commissioner of Internal*

---

2.     Since the first element of collateral estoppel has not been satisfied, there is no need to consider the remaining two elements.

*Revenue v. Sunnen*, 333 US 591, 597, 68 SCt 715, 719, 92 LEd 898 (1948), the United

States Supreme Court noted that:

> The general rule of res judicata applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' Cromwell v. County of Sac, 94 US 351, 352 (1876). The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment. *See* von Moschzisker, 'Res Judicata,' 38 Yale LJ 299; Restatement of the Law of Judgments, §§ 47, 48.

*Id.*

[¶16.] This Court has previously held that a final judgment on the merits is a bar

to any future action between the same parties or their privies upon the same cause of

action settling not only every issue actually presented to sustain or defeat the right

asserted, but every issue that might have been raised in the first action. Adam v.

Adam, 254 NW2d 123, 130 (SD 1977)(citing Chicago & N.W. Ry. Co. v. Gillis, 80 SD

617, 622, 129 NW2d 532, 534 (1964)). A judgment which bars a second action upon the

same claim extends not only to every matter offered and received to sustain or defeat

the claim or demand but also to all other admissible matters which might have been

offered to the same purpose. *Id.* at 130-31.

[¶17.] This Court has held that four elements must be satisfied in order to apply

res judicata: (1) the issue in the prior adjudication must be identical to the present

issue, (2) there must have been a final judgment on the merits in the previous case, (3) the parties in the two actions must be the same or in privity, and (4) there must have been a full and fair opportunity to litigate the issues in the prior adjudication. Matter of Guardianship of Janke, 500 NW2d 207, 209 (SD 1993)(citing Raschke v. DeGraff, 81 SD 291, 295, 134 NW2d 294, 296 (1965)).

[¶18.]      As to the first element, whether the issue in *DM&E I* is identical to the present issue, the Eighth Circuit Court of Appeals in *Hanson v. Hunt Oil Co.*, 505 F2d 1237, 1240 (8th Cir 1974), established the test which this Court has repeatedly applied: "whether the wrong for which redress is sought is the same in both actions." Woodbury v. Porter, 158 F2d 194, 195 (8th Cir 1946); Barnes v. Matzner, 2003 SD 42, ¶16, 661 NW2d 372, 377. In *DM&E I*, DM&E sought defense and indemnification from Acuity in its suit with Olson. DM&E based its claim on the terms of its business automobile insurance contract with Acuity. In this case, DM&E seeks recovery under the uninsured motorist provisions of the same insurance contract. Acuity correctly asserts that in both *DM&E I*, and the present case, the wrong for which redress is sought by DM&E is Acuity's alleged breach of the same insurance contract. *See* Great West Cas. Co. v. Hovaldt, 1999 SD 150, ¶8, 603 NW2d 198, 201 (recognizing an action on the policy is contractual). Therefore, Acuity argues that DM&E should have brought all of the claims it had against Acuity under the provisions of the insurance contract, including the claim of unidentified motorist coverage, in *DM&E I*. Acuity argues that since it did not, DM&E is now precluded by the doctrine of res judicata from raising the issue of unidentified motorist coverage in a second lawsuit.

[¶19.]     In support of its argument, Acuity relies on this Court's decision in *Nelson*, 369 NW2d at 379. There, in the initial case between the parties (*Nelson I*), Nelson instituted a declaratory judgment action against Hawkeye. *Id.* at 380. This Court held that, pursuant to the provisions and exceptions of its policy, Hawkeye had no duty to defend. *Id.* In the second action (*Nelson II*), Nelson brought an action against the insurer seeking reimbursement of counsel fees and judgment for death loss of his pigs caused by the insured's negligence. *Id.* Summary judgment was entered in favor of Hawkeye. *Id.* Based upon pre-trial investigation by both parties, this Court determined that the death loss of pigs suffered by the original plaintiff Schultz was either known or should have been known in the first declaratory judgment action. *Id.* at 381. As a result, the judgment in *Nelson I* was held to be res judicata. *Id.*

[¶20.]     The issue in *DM&E I* was whether, under the terms of the insurance policy, Acuity had a duty to defend and indemnify DM&E in the suit brought by Olson. The issue in the present case is whether, under the terms of the same insurance policy, DM&E is entitled to UM benefits due to the negligence of an unidentified driver. While the specific issue in *DM&E I* is not identical to the specific issue in this case, both issues relate to the same accident, the same set of facts, the same insurance contract and can only be resolved by making a determination of DM&E's rights under that contract. In addition, DM&E knew or should have known of the existence of an unidentified slow moving vehicle when *DM&E I* was tried. In fact, DM&E used evidence of an unidentified slow moving vehicle to bolster its claims in *DM&E I* that the accident was caused by something other than the Hy-Rail equipment. We conclude that all claims DM&E had against Acuity under the provisions of the insurance contract

could have been brought in *DM&E I*. Acuity has demonstrated a technical basis to conclude the first element has been satisfied.

[¶21.]     Concerning the second and third elements, it is undisputed that there has been a final judgment on the merits in *DM&E I*, and the parties in the two actions are the same. Therefore, we turn to the fourth element, was there or would there have been a full and fair opportunity to litigate all of the contract issues in *DM&E I*? We hold that the fourth element has not been established.

[¶22.]     First, while all issues could have been brought in *DM&E I*, we conclude that the fact that they were not did not violate the policy considerations underlying the doctrine of res judicata. Given the particular facts of this case, even if DM&E's claims against Acuity for defense and indemnification and unidentified motorist coverage were all brought in *DM&E I,* it would be reasonable to expect that the trial court would have bifurcated these issues and tried each separately. A resolution of the various issues would almost certainly have followed the same course as has been followed here, whether these issues had been raised in a single lawsuit or in separate lawsuits. Acuity would have had to defend the two causes of action. The only question is whether Acuity would do this at separate trials in a bifurcated lawsuit or at separate trials in separate lawsuits. Since two trials were inevitable, the policy behind the doctrine of res judicata would not have been served by application of the doctrine. Acuity would have still been twice vexed for DM&E's claims under the insurance contract, this litigation would not have found repose until both issues were resolved and the use of judicial resources would not have been conserved in any significant way.

[¶23.]     Second, while both actions are based on the terms and provisions of the same insurance contract, each cause of action is different. Because each cause of action is different, the doctrine of res judicata is applied much more narrowly.

> [But] where the second action between the same parties is upon a different cause or demand, the principle of res judicata is applied much more narrowly. In this situation, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' *Cromwell*, 94 US at 353. *See also* Russell v. Place, 94 US 606, 24 LEd 214 (1876); Southern Pacific R. Co. v. United States, 168 US 1, 48, 18 SCt 18, 27, 42 LEd 255 (1897); Mercoid Corp. v. Mid-Continent Inv. Co., 320 US 661, 671, 64 SCt 268, 273, 88 LEd 376 (1944). Since the cause of action involved in the second proceeding is not swallowed by the judgment in the prior suit, the parties are free to litigate points which were not at issue in the first proceeding, even though such points might have been tendered and decided at that time. But matters which were actually litigated and determined in the first proceeding cannot later be relitigated. Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel.

*Sunnen*, 333 US at 597-98.

[¶24.]     Here the unidentified motorist claim was not "swallowed" by the judgment in *DM&E I*, even though all issues could have been tendered in that cause of action. Accordingly, we conclude the parties were free to litigate the unidentified motorist claim, which was not at issue in the first proceeding, even though it might have been brought and decided at that time. The trial court did not err by refusing to grant Acuity's motion to dismiss based on the doctrine of res judicata.

ISSUE TWO

[¶25.]     **Was DM&E entitled to recover prejudgment interest on the jury's verdict?**

[¶26.]    Acuity argues that the prejudgment interest determination is controlled by the insurance policy. As such, DM&E would not be entitled to prejudgment interest until there was a determination that DM&E was legally entitled to recover under the terms of that policy. This would be the date of the jury verdict: January 25, 2005. DM&E contends that South Dakota law is clear on this issue and that prejudgment interest is required from the date a demand is made for the policy benefits: July 23, 2001. *See* Isaac v. State Farm Mut. Auto. Ins. Co., 522 NW2d 752, 764 (SD 1994). Prejudgment calculations are done as a matter of law. As such, the standard of review is de novo. City of Sioux Falls v. Johnson, 2001 SD 108, ¶8, 632 NW2d 849, 852; City of Colton v. Schwebach, 1997 SD 4, ¶8, 557 NW2d 769, 771.

[¶27.]    We find DM&E's argument persuasive and a correct statement of the law.

> Any person who is entitled to recover damages . . . is entitled to recover interest thereon from the day that the loss or damage occurred[.] . . . Prejudgment interest on damages arising from a contract shall be at the contract rate, if so provided in the contract; otherwise, if prejudgment interest is awarded, it shall be at the category B rate of interest specified in § 54-3-16.

SDCL 21-1-13.1. The trial court determined that the date of DM&E's demand was July 23, 2001, the date this action was commenced. Acuity relies on case precedent from other jurisdictions in support of its argument that the date of the jury verdict controls. We find this authority unpersuasive. A determination of prejudgment interest is mandated by statute. South Dakota law is clear as to the date and rate from which prejudgment interest shall run. Therefore, the trial court correctly determined the proper date from which prejudgment interest should run is from the commencement of this action: July 23, 2001.

ISSUE THREE

**[¶28.]** **Did the trial court abuse its discretion in granting DM&E's motion to compel discovery and denying Acuity's motion to quash?**

**[¶29.]** As noted earlier, the trial court allowed DM&E to amend its complaint to add a cause of action for bad faith and also granted Acuity's motion to bifurcate the UM and bad faith causes of action. DM&E began discovery on the bad faith claim, issuing subpoenas to Acuity's attorney Gary Thimsen and his partner James Moore. Acuity did not respond to discovery. DM&E then moved to compel discovery. Acuity moved to quash the subpoenas. DM&E's motion to compel was granted and Acuity's motion to quash was denied. Acuity has appealed these rulings.

**[¶30.]** We note the request to bifurcate the trial of the UM claim and the bad faith claim was made by Acuity. It sought two trials. An appeal of the UM matter is properly before us because the trial court has entered a final judgment as to the UM matter. However, an appeal of the trial court's rulings related to the bad faith cause of action is not properly before us because that action is still pending. The trial court has entered no final judgment concerning the bad faith cause of action. No appeal from a final judgment concerning the bad faith claim has been filed with this Court. Therefore, the issues surrounding the bad faith claim are not properly before us on appeal.[3] In reality, Acuity is seeking a discretionary appeal of the trial court's discovery orders entered in the bad faith action. Acuity has not followed the statutory requirements for a discretionary appeal found at SDCL 15-26A-13.[4] Acuity cannot put these issues

---

3.    *See* SDCL 15-26A-3.

4.    SDCL 15-26A-13 provides:

#23601

before us by simply including them in its appeal of the UM action.  Accordingly, we

conclude we lack jurisdiction to review the decisions of the trial court on the bad faith

claim.

[¶31.]     Acuity has also raised a number of other issues on appeal.[5]  We have

---

An appeal from an intermediate order made before trial as prescribed by subdivision 15-26A-3(6) may be sought by filing a petition for permission to appeal, together with proof of service thereof upon all other parties to the action in circuit court, with the clerk of the Supreme Court within ten days after notice of entry of such order.

5.     In addition to the issues discussed herein, Acuity claims on appeal:

1.     That the uninsured motorist endorsement in the automobile liability policy between Acuity and DM&E did not provide coverage for DM&E in the event one of its employees sustained injury as the result of the negligence of a third party.

2.     That the trial court should have granted Acuity's motions for directed verdict or in the alternative, its motions for judgment notwithstanding the verdict and new trial because the trial court:

a.     Allowed witness Barbara Radlinger's recorded recollection to be received in evidence under SDCL 29-26-9;

b.     Allowed expert witness Michael Selves to give his opinion;

c.     Allowed the jury to view a video tape showing the operation of Hy-Rail equipment;

d.     Found that sufficient evidence was presented at trial for the jury to find negligence on the part of the unidentified driver, and;

e.     Instructed the jury on proximate cause rather than the specific language of the insurance policy

-13-

carefully considered these issues and find them to be without merit. The decisions and rulings of the trial court were within the trial court's sound discretion and were clearly supported by the law and the facts. Accordingly, as to the trial court's rulings on the bad faith claim we conclude we have no jurisdiction. On all other issues, we affirm.

[¶32.]     GILBERTSON, Chief Justice, and MEIERHENRY, Justice, and GORS, Circuit Judge, and ENG, Circuit Judge, concur.

[¶33.]     LOVRIEN, Circuit Judge, for SABERS, Justice, disqualified.

[¶34.]     GORS, Circuit Judge for KONENKAMP, Justice, disqualified.

[¶35.]     ENG, Circuit Judge for ZINTER, Justice, disqualified.

---

and did not use a form of verdict requested by Acuity.