Gustave SCHICK, Individually and as
Executor of the Estate of Bernice M.
Schick, Plaintiff and Appellee,

v.

Violet RODENBURG, Executrix of the
Estate of Willis Henry Rodenburg,
Defendant and Appellee,

and

Chrysler Corporation and Ford Motor
Company, Intervenors, Defendants
and Appellants.

No. 15256.

Supreme Court of South Dakota.

Argued Sept. 17, 1986.

Decided Dec. 3, 1986.

Rehearing Denied Jan. 8, 1987.

Randolph J. Seiler, Krause, Seiler & Cain, Mobridge, for plaintiff and appellee.

Chester A. Groseclose, Jr., Richardson, Groseclose, Kornmann & Wyly, Aberdeen, for defendant and appellee.

Kennith L. Gosch, Bantz, Gosch, Cremer, Peterson & Oliver, Aberdeen, for Chrysler Corp.

Rory King, Siegel, Barnett & Schutz, Aberdeen, for Ford Motor Co.

SABERS, Justice.

Appellants Chrysler Corporation and Ford Motor Company (Chrysler and Ford/Intervenors) appeal the trial court's approval of a loan receipt and release agreement. We reverse and remand with instructions to modify.

*Facts*

Gustave Schick (Schick), commenced suit against Violet Rodenburg (Rodenburg) as executrix, on December 12, 1984. Schick sought damages for his own personal injuries and the wrongful death of his wife, Bernice Schick, as a result of the alleged negligent operation of an automobile driven by Rodenburg's decedent, Willis Rodenburg. Rodenburg's automobile crossed the centerline and struck Schick's automobile, killing Rodenburg, Schick's wife and injuring Schick. The collision occurred on November 3, 1983, in Walworth County, South Dakota. Rodenburg's answer of January 9, 1985, denied liability, alleged contributory negligence and claimed that the Rodenburg vehicle contained latent defects manufactured by Chrysler.

Schick, Rodenburg, and Rodenburg's insurer, State Farm Insurance Company (State Farm), attempted to settle their dispute by entering into a Loan Receipt and Release Agreement (release). Among its provisions, (discussed more fully *infra*), the release provided: that the accident resulted from the negligent and defective construction by Chrysler ("or any other firm, person or corporation who is responsible for the defective condition") of the automobile owned and operated by Rodenburg's decedent; that the amount of the settlement with the settling defendant (Estate of Willis Rodenburg) will be credited against any ultimate judgment against Chrysler and Ford *only* if Willis Rodenburg is determined to be a joint tort-feasor with Chrysler and Ford; and that the release should be interpreted in accordance with the law of the State of Illinois.[1]

On August 30, 1985, Schick and Rodenburg petitioned the trial court for approval of a compromise settlement which incorporated the terms of the release. Neither Chrysler nor Ford were parties to this action, nor had any involvement in the case until they received notice of hearing on the petition for compromise. Over their objections, the trial court granted the petition by order dated December 23, 1985.

By stipulation and order dated February 10, 1986, Chrysler and Ford intervened in the *Schick v. Rodenburg* action for the purpose of having the court decide how the release would affect their rights. Chrysler and Ford are potential defendants in an action to be brought by Schick. They received a Notice of Breach of Warranty on March 22, 1985, alleging that Willis Rodenburg's 1983 Chrysler Newport automobile was not fit or suitable for the purpose for which it was intended and used and was not of merchantable quality, resulting in the injuries set forth in Schick's complaint.

---

1. State Farm has its home office and principal place of business in the State of Illinois.

The trial court entered Findings of Fact, Conclusions of Law, and a Judgment on February 20, 1986, which stated in part:

\* \* \* \* \* \*

4. The release agreement provides that in the event plaintiff recovers a judgment ... against the intervenors, the intervenors shall not be entitled to a credit against that judgment ... for the amounts mentioned in paragraphs 1 and 3 of the agreement, or for the contingent payments mentioned in paragraphs 6 and 7, unless Willis Henry Rodenburg is determined to be a joint tort-feasor with the judgment debtor. These provisions of the release agreement are valid, binding and enforceable as to all of the parties hereto, including the intervenors, and are not in violation of the public policy of the state of South Dakota.

\* \* \* \* \* \*

7. The release agreement is valid, binding and enforceable in all respects against all of the parties hereto, including the intervenors, applying either South Dakota or Illinois law.

Chrysler and Ford appeal from this judgment.

The only issues to be determined in this case relate to the rights of the intervenors, Chrysler and Ford. We are not concerned here with questions between plaintiff Schick, defendant Rodenburg, and Rodenburg's insurer, State Farm.

### Intervenors Claims

Chrysler and Ford contend that the trial court erred in concluding: that the release is valid under either South Dakota or Illinois law; that it does not violate the public policy of the State of South Dakota; and, that it does not require Chrysler or Ford to receive credit for any portion of the monies paid under the settlement agreement unless Rodenburg and the Intervenors are adjudicated joint tort-feasors.

2. The release agreement was between State Farm and Schick. Although Rodenburg was not a party to the agreement, she did approve it.

## 1. THE RELEASE IS GOVERNED BY THE LAW OF THE STATE OF SOUTH DAKOTA IN RESPECT TO INTERVENORS RIGHTS

■ The "place of the wrong" rule governs the substantive rights of parties to a multi-state tort action. *Heidemann v. Rohl,* 86 S.D. 250, 256, 194 N.W.2d 164, 167 (1972). In this case, despite the fact that a release was executed in South Dakota, we applied the law of Nebraska because the effect of a release is governed by the substantive law of the place where the alleged tort occurred. *Id.* 86 S.D. at 261, 194 N.W.2d at 170. Therefore, State Farm's proposed release is governed by the law of the State of South Dakota because the automobile accident occurred in Walworth County, South Dakota. Accordingly, we hold that the effect of the release upon the rights of the intervenors is controlled by South Dakota substantive law; notwithstanding paragraphs 10e. and 12 of the release which provide otherwise.

## 2. THE RELEASE CONTRAVENES SOUTH DAKOTA PUBLIC POLICY AND THE UNIFORM CONTRIBUTION AMONG JOINT TORT-FEASORS ACT

Rodenburg was insured by State Farm for the injuries complained of to the extent of $100,000 per claim, for a total of $200,000 per accident. The release given by Schick to State Farm provides $85,000 in immediate payments to Schick, with a guarantee of an additional $115,000 in payments to Schick if he will sue Chrysler and Ford. As such, State Farm has guaranteed Schick a total recovery of at least $200,000,[2] the full extent of its insurance limits.

The release in question is a type of guaranteed verdict agreement. Guaranteed verdict agreements generally fall into three categories: (1) Mary Carter[3] agreements;

3. Derived from the case of: *Booth v. Mary Carter Paint Company, Inc.,* 202 So.2d 8 (Fla.Ct.App. 1967). Mary Carter agreements usually call for the settling defendant to pay the plaintiff at least a specified minimum of damages at the

(2) Gallagher [4] agreements; and (3) loan receipt agreements. The latter type has been devised as a form of guaranteed verdict agreement in cases involving joint tort-feasors. They are distinguishable from both Mary Carter and Gallagher agreements because the settling defendant in a loan receipt agreement promises to loan the plaintiff an amount of money before trial to be repaid out of any ultimate recovery the plaintiff makes against the nonsettling defendant.

The first nine paragraphs of this release provide: (1) Upon execution of the agreement, Schick will be paid $85,000 as a loan which is to be repaid to State Farm if Schick effects a recovery in excess of $200,000 in the anticipated lawsuit against Chrysler and Ford. (2) If there is no recovery against Chrysler or Ford, or if the recovery is less than $200,000, the loan payment need not be repaid. (3) If there is no recovery against Chrysler or Ford, State Farm will pay Schick an additional sum of $115,000. (4) If there is a recovery against Chrysler or Ford but it is in a gross amount of less than $200,000, State Farm will make an additional payment to Schick bringing his gross recovery up to $200,000.

Paragraph 10 of the release provides that if Willis Rodenburg and Chrysler or Ford are determined to be joint tort-feasors, then the first nine paragraphs do not apply. Paragraph 10c. provides that the nonsettling parties, (Chrysler and/or Ford), are entitled to a reduction of Schick's claim in the greater of the amount of the consideration State Farm paid for the release, i.e., $200,000, or the settling party's (Willis Ro-

denburg's) pro rata share of the total liability to Schick, whichever is greater. Paragraph 10e. provides for the application of a "Pierringer" [5] agreement. Under the Pierringer agreement, Schick would have no repayment obligation, State Farm would pay the future contingent payments, and Rodenburg would be released in accordance with the guidelines set forth in *Frey v. Snelgrove*, 269 N.W.2d 918 (Minn.1978), and paragraph 10 of the agreement. Finally, paragraph 12 provides that Illinois law governs the interpretation of the release agreement.

South Dakota has adopted the provisions of the Uniform Contribution Among Joint Tort-Feasors Act (UCAJTA), in SDCL §§ 15–8–11 to 15–8–22, inclusive. SDCL 15–8–17 provides:

A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides; but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.

In *Degen v. Bayman*, 90 S.D. 400, 408–409, 241 N.W.2d 703, 707–708 (1976), ("Degen II"), we held that the amount received in settlement from a party should be deducted from the judgment even though the settling party has never been judicially determined to be a joint tort-feasor. In *Degen II*, we adopted the view stated by the Su-

conclusion of the trial regardless of the outcome. In the event of a plaintiff's verdict, the amount would be in proportion to the award, generally in some inverse ratio to the amount which the plaintiff is able to recover against the nonsettling defendant(s). They also often require that the agreement remain secret and undisclosed to the nonsettling defendant(s).

4. Derived from the case of: *City of Tucson v. Gallagher*, 493 P.2d 1197 (Ariz.1972). Gallagher agreements are very similar to Mary Carter agreements except that Gallaghers provide that a settling party has the right to settle with the plaintiff at a fixed sum at any time during the trial, and that the settling party will guaranty

payment of that amount to the plaintiff regardless of the outcome of the lawsuit.

5. Derived from *Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (1963). The states of Wisconsin and Minnesota, (*Frey, supra*), have held that a plaintiff can make a double recovery by entering into a Pierringer release if it is determined that the settling party was not liable. *See: Schantz v. Richview, Inc.*, 311 N.W.2d 155 (Minn.1980); *Stanhope v. Brown County*, 90 Wis.2d 823, 280 N.W.2d 711 (Wis.1979). *See also: Papenfus v. Shell Oil Company*, 254 Wis. 233, 35 N.W.2d 920 (Wis.1949).

preme Court of North Dakota in *Levi v. Montgomery,*[6] 120 N.W.2d 383 (N.D.1963), to the effect that the court will consider the issues as framed by the pleadings in determining the question of whether a party is a joint tort-feasor. *Id.*

In *Duncan v. Pennington County H.A.,* 283 N.W.2d 546, 550 (S.D.1979), we affirmed the *Degen II* ruling and stated:

> This treatment of the settlement amount paid by a defendant later found not liable to the plaintiff is the stance taken by a majority of courts. 'The prevailing view, with some authority to the contrary, is that [the settlement amount] must be so credited [against the judgment] even where the person released was not in fact a joint tort-feasor, or was not liable to the plaintiff at all.' (citations omitted).

*Id.* at 551.

■ Similarly, in *Carr v. Korkow,* 610 F.Supp. 25 (D.S.D.1985), *vacated on other grounds,* 788 F.2d 485 (8th Cir.1986) (requiring pro tanto, not pro rata reduction, where there was no adjudication of relative fault of all defendants), the court stated that if a plaintiff sues defendants as joint tort-feasors and settles with them, they are joint tort-feasors. *Id.* at 28. Thus, for purposes of applying the UCAJTA, a settling party can become a joint tort-feasor even though he has never been judicially determined to be liable or at fault. Therefore, the *Carr* holding provides that the settling parties, without additional find-

ings, are joint tort-feasors for all purposes including the application of SDCL 15–8–17. *Id.*

■ Implicit in the pleadings and expressly stated in paragraph 10 of the Schick/State Farm release, is the allegation that Rodenburg (the settling party) is a joint tort-feasor with Chrysler and Ford (the nonsettling parties). Paragraph 5 provides that the agreement does not release the other alleged tort-feasors, but rather reserves Schick's right to sue them. As such, SDCL 15–8–17 is applicable. The *Degen, Duncan,* and *Carr* cases assume that once the allegation is made that one or more parties are or may be joint tort-feasors, and settlement is made with one of them, then any ultimate verdict against the nonsettling parties must be reduced by the amount of the settlement, regardless of whether the settler was liable to the plaintiff or not. Therefore, in reliance on SDCL 15–8–17 and the above authorities, we find that Chrysler and Ford as nonsettling parties are entitled to credit for the greater of the settlement State Farm made on behalf of Rodenburg, or Rodenburg's percentage of liability as ultimately determined, regardless of whether or not Rodenburg is adjudicated a joint tort-feasor.

As mentioned previously, the law of South Dakota governs the interpretation of this release. Although the State of Illinois has approved the use of both Mary Carter and loan receipt agreements,[7] this court has yet to expressly rule on what effect, if

---

**6.** "Where the plaintiff charges several defendants with tort, and one of the defendants buys its way out of the suit and is given a release and covenant not to sue, the court will not go into the question of liability of such defendant. The test in such case is: Was the defendant sued as a tort-feasor? If so, any liability of the remaining defendants to the plaintiff must be reduced by the amount paid for such release or covenant not to sue by such defendant. The question of actual liability in tort of any of the defendants so discharged by release and covenant not to sue is wholly immaterial." *Levi,* 120 N.W.2d at 389.

**7.** *See: Reese v. Chicago Burlington & Quincy R.R. Co.,* 55 Ill.2d 356, 303 N.E.2d 382 (1973); *Gatto v. Calumet Flexicore Corporation, et al.,* 65

Ill.2d 513, 337 N.E.2d 23 (1975); *cert. denied,* 425 U.S. 936, 96 S.Ct. 1669, 48 L.Ed.2d 178 (1976); *Casson v. Nash,* 74 Ill.2d 164, 23 Ill.Dec. 571, 384 N.E.2d 365 (1978); *Harris Trust & Savings Bank v. Ali,* 100 Ill.App.3d 1, 55 Ill.Dec. 186, 425 N.E.2d 1359 (1981); *Popovich v. Ram Pipe & Supply Co.,* 82 Ill.2d 203, 45 Ill.Dec. 167, 412 N.E.2d 518 (1980) (*Held:* When a pretrial loan agreement is executed before judgment, then the plaintiff's recovery from the nonsettling defendant is reduced by an amount necessary to prevent any double recovery, taking into account the repayment provisions of the agreement); *c.f. Palmer v. Avco Distributing Corp.,* 412 N.E.2d 959, 82 Ill.2d 211, 45 Ill.Dec. 377 (1980); *Webb v. Toncray,* 102 Ill.App.3d 78, 57 Ill.Dec. 757, 429 N.E.2d 874 (1981).

any, these types of agreements have upon the rights of nonsettling defendants.[8] However, in *Degen v. Bayman*, 86 S.D. 598, 200 N.W.2d 134 (1972) ("Degen I"), we considered a guaranteed verdict agreement in which the plaintiff gave the settling defendant a loan receipt agreement which provided that, (1) the settling party would pay the plaintiff $65,000, and (2) the settling party could recover his $65,000 payment by indemnification from the nonsettling defendant. *Id.* 86 S.D. at 605–606, 200 N.W.2d at 138. We wrote:

> To accomplish this, it was necessary to persuade the jury that plaintiff was entitled to recover at least $65,000 damages and that [the nonsettling defendant] was primarily liable. Plaintiff and [the settling defendant] thus shared a mutual interest adverse to [the nonsettling defendant]. This, of course, opened attractive opportunities to cross-examine friendly witnesses.

*Id.*

■ In *Duncan, supra,* we quoted with approval from the New Jersey Supreme Court for the rule that there should be but one satisfaction for a wrong because of the strong policy against unjust enrichment. 283 N.W.2d at 552, quoting *Theobald v. Angelos*, 44 N.J. 228, 208 A.2d 129, 135 (1965). Therefore, paragraph 10e., of the release that provides for the application of a Pierringer agreement which in turn permits a double recovery under the laws of Wisconsin and Minnesota, contravenes South Dakota public policy.

3. THE EXTENT OF CREDIT TO BE APPLIED AGAINST SUBSEQUENT JUDGMENT

The next question is the extent to which the nonsettling defendants are entitled to credit against any subsequent judgment for the amounts State Farm paid, loaned, or guaranteed on behalf of Rodenburg.

■ In order to give effect to the UCAJTA, this court will attempt to look to substance and not form, at reality and not illusion. We will look at what the agreement does, not what it says it does. Rodenburg is a joint tort-feasor in that it is charged that he produced the injury to the plaintiffs with Chrysler and Ford. For this purpose, he is charged as a wrongdoer and he is a joint wrongdoer with Chrysler and Ford. It seems unlikely that State Farm would pay (or loan) $85,000, and guarantee an additional $115,000, a total of $200,000, the full extent of their insurance coverage limits, if he were not.

■ Despite the guarantee of payment of $200,000 the agreement purports to give no credit to either Chrysler or Ford unless they are determined to be joint tort-feasors with Rodenburg. In addition, the agreement requires Schick to repay the $85,000 loan to State Farm only if Schick's judgment against Chrysler and Ford exceeds $200,000, and then repayment is required only to the extent that Schick's judgment against Chrysler and Ford exceeds $200,000. Instead of attempting to reduce litigation, the agreement promotes litigation because under the agreement the plaintiff must sue Chrysler and Ford in order to get the balance of his guaranteed payment of $115,000. The agreement as written was a clever device to guarantee payment of $200,000 to the plaintiffs while attempting to withhold credit from Chrysler and Ford for the settling funds, and possibly even returning part of those funds to State Farm. A settling defendant cannot, by mere terminology, determine the amount of credit to be given nonsettling defendants under the UCAJTA. That is the job of the courts based on the facts, and reality. Therefore, the UCAJTA and our prior case law require that the minimum credit to which Chrysler and Ford are entitled against any subsequent judgment is neither $85,000 nor $115,000 but $200,000. This is so whether or not Rodenburg is

8. *See: Corn Exchange Bank v. Tri-State Livestock,* 368 N.W.2d 596, 599–600 (S.D.1985), wherein we recognized the potential for undermining the adversarial nature of trials when undisclosed Mary Carter agreements are used. However, this case does not sanction the use of Mary Carter or Gallagher agreements.

later determined to be a joint tort-feasor by the fact finder.

We hold that the agreement be given effect as a loan agreement only to the extent that the money advanced thereunder, $85,000, is to be repaid by plaintiff to State Farm.[9] For example, assume plaintiff obtains a judgment against Chrysler and Ford for $300,000. This would require plaintiff to pay back the $85,000 loan to State Farm, and would entitle Chrysler and Ford to credit against plaintiff's judgment of $200,000, or more based on the percentage of Rodenburg's liability as ultimately determined by the fact finder.

Accordingly, we reverse and order the trial court judgment modified to reflect that South Dakota substantive law governs interpretation of the loan receipt and release agreement, and that Chrysler and Ford, as alleged joint tort-feasors, are entitled to credit for the greater of the amount of settlement or the percentage of Rodenburg's liability as is ultimately determined by the fact finder.

All the Justices concur.

---

9. *See supra* note 7: *Popovich,* 412 N.E.2d at 521.