#25898, #25911-aff in pt, rev in pt & rem-JKM

**2011 S.D. 80**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

| | |
|---|---|
| RITA FIX, | Plaintiff and Appellant, |
| and | |
| JOHN S. LOVALD, | Plaintiff, |
| v. | |
| FIRST STATE BANK OF ROSCOE,<br>A SOUTH DAKOTA CORPORATION,<br>ROSCOE COMMUNITY BANKSHARES, INC.,<br>A SOUTH DAKOTA CORPORATION | Defendants and Appellees, |
| and | |
| JAMES and PAMELA BAER<br>and VAUGHN BECK, | Defendants. |

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE  FIFTH JUDICIAL CIRCUIT
FAULK COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JAMES W. ANDERSON
Judge
* * * *

| | |
|---|---|
| LEE SCHOENBECK<br>Watertown, South Dakota | Attorney for plaintiff<br>and appellant. |
| ROGER W. DAMGAARD<br>SANDER J. MOREHEAD of<br>Woods, Fuller, Shultz & Smith PC<br>Sioux Falls, South Dakota | Attorneys for defendants<br>and appellees. |

* * * *

ARGUED AUGUST 23, 2011

OPINION FILED **11/30/11**

#25898, #25911

MEIERHENRY, Retired Justice

[¶1.] This appeal involves Rita Fix's claim against First State Bank of Roscoe and Roscoe Community Bankshares, Inc. (Bank) for intentional infliction of emotional distress and abuse of process. The trial court dismissed Fix's intentional infliction of emotional distress claim; the abuse of process claim was tried to a jury. Fix claims that the trial court erred in dismissing the intentional infliction of emotional distress claim and erred in instructing the jury at trial. We reverse and remand for a new trial on the abuse of process claim.

## FACTS AND BACKGROUND

[¶2.] Part of the controversy between Fix and the Bank involves property Fix owned in Faulk County, South Dakota. In 1997, Fix signed a contract for deed selling the property to her son and daughter-in-law, Jeff and Marie Fix, but retained a life estate in the house located on the property. In 1999, Jeff and Marie obtained a loan from the Bank to finance their farming operation. To secure the loan, the Bank required Jeff and Marie to obtain a warranty deed for the property, including Fix's life estate in the house. Although hesitant to relinquish her house, Fix eventually executed a warranty deed to Jeff and Marie after the Bank assured her that she could retain possession of the house. In a letter from the Bank president, the Bank wrote:

> In the event that for any reason the bank becomes the owner of the described real estate, you will have full right of possession to the home on the premises as long as you are living.

[¶3.] In 2004, Fix filed for bankruptcy in federal court. Fix did not claim a homestead exemption for the house nor list her interest in the house as personal

property. Fix retained possession of the house until 2005 when Jeff and Marie's financial problems forced them to convey the house and the property to the Bank in lieu of foreclosure. Later that same year, the Bank sold the property to a third party and then sought to remove Fix from the house.

[¶4.]        While in federal bankruptcy court, Fix sued the Bank in state court for: (1) right to possession of the house; (2) breach of fiduciary duty; (3) intentional infliction of emotional distress; (4) deceit; and (5) fraudulent misrepresentation. In response, the Bank requested that the bankruptcy court enjoin Fix's state action. The Bank claimed that Fix's cause of actions belonged to the bankruptcy estate not Fix personally. The bankruptcy court agreed with the Bank that all five alleged causes of action could only be brought by Fix's bankruptcy trustee. Eventually, the issue was appealed to federal district court and to the Eighth Circuit Court of Appeals. The Eighth Circuit found that all of Fix's claims belonged to the bankruptcy estate with one exception: Fix's claim for intentional infliction of emotional distress. *See Fix v. First State Bank of Roscoe*, 559 F.3d 803, 810 (8th Cir. 2009).

[¶5.]        In addition to the bankruptcy and civil proceedings, Jeff, Marie, and Fix were indicted in June 2005 in state court on multiple criminal counts. The criminal counts involved an alleged criminal scheme where Jeff sold grain covered by the Bank's security interest in Fix's name; Fix would then endorse the grain checks, deposit them in her account, and write Jeff a check for the amount. Jeff ultimately pled guilty and the charges against Marie were dismissed. The criminal proceedings against Fix, however, were not dismissed but remained dormant for

several months despite her attorney's requests to proceed or dismiss. Eventually in February 2006, Vaughn Beck, the Edmunds County State's Attorney who had brought the charges and who also represented the Bank civilly, contacted Fix's criminal attorney. Beck offered to dismiss the criminal charges against Fix if she would "deed the house back to the bank." This prompted Fix to amend her state court pleadings to include a claim of abuse of process against both the Bank and State's Attorney Beck and to proceed with her intentional infliction of emotional distress claim against the Bank. Her abuse of process claim alleged that the Bank conspired with Beck to use the criminal proceeding for the illegitimate purpose of removing her from the house.

[¶6.]       Prior to trial, Beck settled with Fix for $50,000. Additionally, the trial court granted summary judgment against Fix on her intentional infliction of emotional distress claim against the Bank. The abuse of process claim was tried to a jury in February 2010. The jury returned a verdict finding the Bank liable but awarded no damages to Fix.

## ISSUES

[¶7.]       Fix raises several issues on appeal. (1) Fix claims that the trial court's instruction on emotional distress was improper and not a correct statement of the law. The trial court's instruction required Fix to prove "she suffered *extreme and disabling* emotional distress as a proximate result of the abuse of process." (Emphasis added.) She claims that she does not need to prove that her emotional distress was "extreme and disabling." (2) Fix also claims that the trial court erred

in dismissing her claim of intentional infliction of emotional distress against the Bank.

[¶8.] Additionally, Fix claims error (3) because the Bank was allowed to argue its damages without claiming offset or restitution; (4) because the trial court improperly applied the offset provision of the joint tortfeasor statute; (5) because the alternate juror was selected by lot contrary to statute; and (6) because expenses incurred in a separate federal court proceeding were incorrectly taxed as costs. The Bank also raises three issues by notice of review that we deem waived or without merit.

## ANALYSIS

[¶9.] **1. Emotional distress damages resulting from an abuse of process claim need not be "extreme and disabling" in order to recover.**

[¶10.] Under our standard of review for jury instructions:

> A trial court has discretion in the wording and arrangement of its jury instructions, and therefore we generally review a trial court's decision to grant or deny a particular instruction under the abuse of discretion standard. However, no court has discretion to give incorrect, misleading, conflicting, or confusing instructions; to do so constitutes reversible error if it is shown not only that the instructions were erroneous, but also that they were prejudicial.

*Bertelsen v. Allstate Ins. Co.*, 2011 S.D. 13, ¶ 26, 796 N.W.2d 685, 695 (quoting *Wangsness v. Builders Cashway, Inc.*, 2010 S.D. 14, ¶ 10, 779 N.W.2d 136, 140 (quoting *State v. Cottier*, 2008 S.D. 79, ¶ 7, 755 N.W.2d 120, 125)).

[¶11.] Several of the trial court's jury instructions required the jury to find severe, extreme, and disabling emotional distress in order for Fix to recover

damages.[1]  We hold that Fix was not required to show that she suffered extreme and disabling emotional distress in order to recover damages for emotional distress caused by the abuse of process.

[¶12.]        The Bank mistakenly relies on our prior decision in *Maryott v. First National Bank of Eden*, 2001 S.D. 43, 624 N.W.2d 96, 104.  In *Maryott*, the plaintiff sued First National Bank of Eden under a statutorily adopted Uniform Commercial Code (U.C.C.) provision that makes a bank liable to its customers if it wrongfully dishonored checks.  *See* SDCL 57A-4-402(b).  The statute at issue provided damages as follows:

> (b) A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item. Liability is limited to actual damages proved and may include damages for an arrest or prosecution of the customer or other consequential damages.  Whether any consequential damages

---

1.      Fix contends the following four jury instructions were an incorrect statement of the law:

> 1.      Jury Instruction No. 4 provided that the jury must find Fix "suffered an extreme and disabling emotional distress as a result of [the Bank] and Vaughn Beck's agreement to use, and their use of, a criminal prosecution primarily for an improper purpose."
>
> 2.      Jury Instruction No. 11 provided that Fix "may only recover damages for severe emotional distress."
>
> 3.      Jury Instruction No. 25 provided that if the jury decides for Fix on the question of liability, the jury "must then fix the amount of money which will reasonably and fairly compensate" Fix for "the pain and suffering, extreme emotional distress and loss of capacity of the enjoyment of life . . . ."
>
> 4.      Special Verdict Question No. 4 directed the jury that they must find Fix "suffered extreme and disabling emotional distress as a proximate result of the abuse of process."

are proximately caused by the wrongful dishonor is a question of fact to be determined in each case.

*Id.* The question was whether emotional damages were included and recoverable as "other consequential damages." Since the statute did not define "other consequential damages," this Court looked to other jurisdictions that had interpreted the same 402(b) language and followed those jurisdictions that required proof of intentional or negligent infliction of emotional distress. We held that,

> [b]ecause [the statute] does not define the consequential damages that may be recovered and does not clearly indicate an independent right of recovery of emotional damages, we must interpret that section in light of our precedent which requires a plaintiff to prove either intentional or negligent infliction of emotional distress to recover emotional damages.

*Maryott*, 2001 S.D. 43, ¶ 20, 624 N.W.2d at 103.

[¶13.] *Maryott* is distinguishable from the present tort case and should be read narrowly, mainly because the plaintiff's claim in *Maryott* was based on a U.C.C. statutory right to recover damages for a dishonored check. It did not involve a tort action. *Maryott* held that a plaintiff could not recover emotional damages under the statute unless the plaintiff met the requirements of the independent tort of negligent or intentional infliction of emotional distress. *Id.* ¶ 17. Similarly, the Wyoming Supreme Court and Minnesota Supreme Court both found that "'extra-contractual damages, including those for emotional distress, are not recoverable for breach of contract except in those rare cases where the breach is accompanied by an independent tort.'" *Long-Russell v. Hampe*, 39 P.3d 1015, 1019 (Wyo. 2002) (quoting *Lickteig v. Alderson, Ondov, Leonard & Sween, P.A.*, 556 N.W.2d 557, 561 (Minn. 1996)).

[¶14.] In South Dakota, tort damages are governed by SDCL 21-3-1, which provides: "For the breach of an obligation *not arising from contract*, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for *all* the detriment proximately caused thereby, whether it could have been anticipated or not." (Emphasis added.) We have consistently recognized emotional distress damages in tort actions. *Roth v. Farner-Bocken Co.*, 2003 S.D. 80, ¶ 70, 667 N.W.2d 651, 670 (upholding a jury award of damages for the feelings of "anger, betrayal, and devastation" in an invasion of privacy action); *Carey v. Jack Rabbit Lines, Inc.*, 309 N.W.2d 824, 827 (S.D. 1981) (upholding a trial court's award of damages in a negligence action as reasonable because "in addition to the painful injury, appellee . . . suffered mental anguish"); *Bean v. Best*, 77 S.D. 433, 441-42, 93 N.W.2d 403, 408 (1958) ("A person who has a cause of action *for a tort* may be entitled to recover as an element of damages for that form of mental distress known as humiliation, that is, a feeling of degradation or inferiority . . . ." (emphasis added) (quoting Restatement (First) of Torts § 905 cmt. d (1939))); *Davis v. Holy Terror Mining Co.*, 20 S.D. 399, 107 N.W. 374, 379 (1906) (reasoning that in determining damages "the jury should take into consideration the age and condition in life of the plaintiff, the physical injury inflicted, the bodily pain *and mental anguish endured*" (emphasis added)). Since an abuse of process claim is an intentional tort, a plaintiff can seek damages in the form of emotional distress without proving the independent tort of intentional infliction of emotional distress and without proving the heightened standard of "extreme and disabling" emotional distress.

[¶15.]	This holding comports with other jurisdictions that recognize a plaintiff's right to recover damages for mental anguish in abuse of process actions without requiring the plaintiff to meet the heightened standard of "extreme and disabling." For example, in reviewing damages awarded by a jury in an abuse of process action, the North Dakota Supreme Court found that "[a] jury may properly consider wounded feelings, mental suffering, humiliation, degradation, and disgrace in fixing compensatory damages." *Stoner v. Nash Finch, Inc.*, 446 N.W.2d 747, 753 (N.D. 1989). In a footnote, the North Dakota court distinguished damages in an abuse of process cause of action from those in a negligent infliction of emotional distress cause of action. The court noted that the "tort of abuse of process, unlike the tort of negligent infliction of emotional distress, does not require '[s]pecific proof of intangible damages [such as mental injury] . . . as a prerequisite to an award if it is clear that such damages would accrue to a normal person.'" *Id.* at 753 n.3 (alteration in original) (quoting Prosser & Keeton, *The Law of Torts* § 121, at 900 (5th ed. 1984)).

[¶16.]	In summary, we hold that to recover emotional distress damages sustained as a result of the tort of abuse of process, a plaintiff is not required to prove the elements of intentional or negligent infliction of emotional distress. The trial court erred by requiring Fix to prove that her emotional damages were "extreme and disabling." Because the jury was given the wrong legal standard for recovering emotional distress damages, we reverse and remand for a new trial.

[¶17.]	**2.	Fix failed to show a genuine issue of material fact for her intentional infliction of emotional distress claim.**

[¶18.]    Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  SDCL 15-6-56(c).  We will affirm only when "there are no genuine issues of material fact and the legal questions have been correctly decided."  *Bego v. Gordon*, 407 N.W.2d 801, 804 (S.D. 1987).

[¶19.]    To survive the Bank's motion for summary judgment, Fix needed to demonstrate that there was an issue of material fact as to each of the elements of intentional infliction of emotional distress: "(1) an act by the defendant amounting to extreme and outrageous conduct; (2) intent on the part of the defendant to cause the plaintiff severe emotional distress; (3) the defendant's conduct was the cause in-fact of plaintiff's distress; and (4) the plaintiff suffered an extreme disabling emotional response to defendant's conduct."  *Anderson v. First Century Fed. Credit Union*, 2007 S.D. 65, ¶ 38, 738 N.W.2d 40, 51-52.

[¶20.]    The first element requires Fix to show there is no genuine issue of material fact as to whether the Bank's conduct was "extreme and outrageous."  Fix claims that the Bank's act of selling and requiring her to vacate the house in direct contravention to the Bank's 1999 letter promising her possession for life constituted extreme and outrageous conduct.  We have said:

> The question whether the defendant's conduct was extreme and outrageous is initially for the trial court.  *Richardson v. East River Elec. Power Coop.,* 531 N.W.2d 23, 27 (S.D. 1995).  Comment d to the Restatement (Second) of Torts § 46 (1965) explains that recovery is permissible only where the actor's conduct was "extreme and outrageous."  Proof under this tort

> must exceed a rigorous benchmark. The conduct necessary to form intentional infliction of emotional distress must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community." *Id. See Stene v. State Farm Mut. Auto. Ins. Co.,* 1998 S.D. 95, ¶ 32, 583 N.W.2d 399, 404; *Tibke v. McDougall,* 479 N.W.2d 898, 906-07 (S.D. 1992). Liability for this tort will "not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities." Restatement (Second) of Torts § 46 cmt. d.

*Harris v. Jefferson Partners, L.P.*, 2002 S.D. 132, ¶ 11, 653 N.W.2d 496, 500. The conduct "is of a nature especially calculated to cause, and does cause, mental distress of a very serious kind." *See Citibank (S.D.), N.A. v. Hauff*, 2003 S.D. 99, ¶ 24, 668 N.W.2d 528, 535.

[¶21.] The facts, as set forth by Fix, do not meet that "rigorous benchmark." *Harris*, 2002 S.D. 132, ¶ 11, 653 N.W.2d at 500. Fix's main argument relies on the Eighth Circuit's decision that Fix owned the cause of action of intentional infliction of emotional distress. That decision, however, only dealt with ownership of the cause of action, not whether Fix could withstand a summary judgment motion. She bases her claim on the Bank's failure to abide by the letter's promise that she could remain in the house. Instead, the Bank sold the property and told her she had to move out, which she claims caused her severe emotional distress. The Bank may have intentionally reneged on its promise, but such conduct under the circumstances cannot be characterized as "extreme and outrageous" or exceeding "all bounds usually tolerated by decent society." *See Stene*, 1998 S.D. 95, ¶ 32, 583 N.W.2d at 404. Therefore, even assuming Fix's version of events, granting summary judgment was not error.

**[¶22.]    3.    Allowing the Bank to argue in its defense that Fix caused financial loss to the Bank was not error.**

[¶23.]    We review a court's evidentiary rulings under the abuse of discretion standard. *State ex rel. Dep't of Transp. v. Spiry*, 1996 S.D. 14, ¶ 11, 543 N.W.2d 260, 263 (citations omitted). An evidentiary ruling will not be overturned unless error is "demonstrated . . . [and] shown to be prejudicial error." *Id.* (quoting *Shaffer v. Honeywell, Inc.,* 249 N.W.2d 251, 258 (S.D. 1976)).

[¶24.]    Fix argues that during closing arguments, the Bank should not have been allowed to refer to its underlying losses due to Fix's conversion of thousands of dollars of the Bank's collateral. According to Fix, the argument was impermissible for two reasons. First, the Bank is required to confine their comments to issues presented by the evidence. *Schoon v. Looby*, 2003 S.D. 123, ¶ 14, 670 N.W.2d 885, 890. Fix contends that because the Bank did not assert a counterclaim or request an offset, the Bank should have not been allowed to comment about its financial losses. Second, Fix argues that the reference to the Bank's losses misled the jury about the measure of damages and was highly prejudicial.

[¶25.]    Allowing the reference in final argument is not reversible error. The Bank's argument was relevant to Fix's claim that the Bank used the criminal prosecution "primarily for an improper purpose."[2] The Bank presented evidence

---

2.    The relevant portion of Jury Instruction No. 4 provides

> In this action, Rita Fix has the burden of proving . . . [t]hat [she] suffered an extreme and disabling emotional response as a result of [the Bank] and Vaughn Beck's agreement to use, and their use of, a criminal prosecution primarily for an improper purpose.

and claimed that using criminal proceedings to seek restitution for the Bank's losses was a proper purpose. Additionally, the Bank's counsel explicitly told the jury that it was not seeking restitution from Fix as part of this lawsuit. Thus, we find that the trial court did not abuse its discretion by allowing the Bank to refer to its underlying loss in its closing argument.

[¶26.] **4.** **The joint tortfeasor's settlement amount reduces a total judgment not just compensatory damages.**

[¶27.] Before trial, Beck, an alleged co-conspirator in Fix's abuse of process claim, settled with Fix for $50,000 in exchange for a complete release. The trial court indicated that it intended to deduct the $50,000 from any jury award for compensatory damages. Thus, if the jury awarded compensatory damages of $50,000 or less, the award would be reduced to zero leaving no compensatory damages to support a punitive damage claim. We find this rationale misplaced. Normally, we would not address this issue because the jury awarded no damages, and Fix was not affected by the ruling. However, since this may become an issue on retrial, we will address it.

[¶28.] The issue is controlled by SDCL 15-8-17, which was adopted pursuant to the Uniform Contribution Among Tortfeasors Act. The statute provides:

> A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides; *but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release*, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.

(Emphasis added.) The statute expressly allows a reduction to "total claim" against the remaining joint tortfeasors. It makes no distinction between compensatory and

punitive damages. Although this issue has not been previously addressed, our analysis of SDCL 15-8-17 in prior cases contemplated that any settlement amount from one joint tortfeasor reduced the total judgment against other joint tortfeasors. *See Schick v. Rodenburg*, 397 N.W.2d 464, 467-68 (S.D. 1986); *Duncan v. Pennington Cnty. Hous. Auth.*, 283 N.W.2d 546, 550 (S.D. 1979) (citing *Degan v. Bayman*, 90 S.D. 400, 241 N.W.2d 703 (1976)). For example, in determining joint tortfeasor status under SDCL 15-8-17 in *Schick,* we reiterated "that [the settlement amount] must be so credited [against the judgment]." 397 N.W.2d at 468 (alteration in original). Thus, the $50,000 should be deducted from the total judgment, if any, not just to offset compensatory damages.

[¶29.]     **5.     Current procedural rules allow for seating an alternate juror by lot.**

[¶30.]     Supreme Court Rule 06-42 codified in SDCL 15-6-47(b) allows, in addition to regular jurors, additional jurors to "be called and impaneled to sit as alternate jurors." Alternate jurors are seated to replace regular jurors who "prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties." *Id.* Under this Rule, the alternate jurors are chosen "in the order in which they are called." *Id.* An additional Rule, at issue here, allows the judge to select "alternate jurors by lot." The Rule provides:

> In addition to the method of choosing or seating an alternate juror provided by § 15-6-47(b), the judge may choose the alternate jurors by lot, or by such other means as the parties agree on the record.

SDCL 15-14-10.1. Fix argues that the Rule only allows selection by lot if the parties agree. Under her interpretation, the phrase "or by such other means as the parties

agree on the record," modifies the phrase "the judge may choose the alternate jurors by lot" and selection by lot could only be used if the parties agree. A plain reading of the Rule suggests otherwise. The grammatical construction of the sentence sets off the final phrase – "or by such other means as the parties agree on the record" – by a comma. The placement of the comma drives its meaning. The comma separates two distinct concepts, that is, picking jurors "by lot" and picking them "by such other means." The second concept – "by such other means" – has a further qualifier – "as the parties agree on the record." Perhaps without the comma, a stronger argument could be made that the parties have to agree to either method of picking alternate jurors. But, we have to assume the drafter's placement of the comma was purposeful. Consequently, we conclude that the judge has the discretion to pick alternate jurors by lot.

[¶31.] **6.** **Whether costs incurred in a separate federal court proceeding can be taxed in this matter.**

[¶32.] "We review an award of disbursements under an abuse of discretion standard." *Behrens v. Wedmore*, 2005 S.D. 79, ¶ 69, 698 N.W.2d 555, 581. However, "[o]nly those expenses specifically authorized by statute may be taxed as disbursements, and although the trial court has some discretion, it must use cautious restraint within the statutory specifications." *Id.* (quoting *Lewis v. Aslesen*, 2001 S.D. 131, ¶ 10, 635 N.W.2d 744, 747 (additional citations omitted)).

[¶33.] If costs are again an issue on retrial, we caution the trial court, before awarding costs, to require a showing that the costs were "necessary expenditures 'incurred in gathering and procuring evidence or bringing the matter to trial'" and

only award the prevailing party expenses and charges that are of the same general

kind as the

> costs of telephonic hearings, costs of telephoto or fax charges, fees of witnesses, interpreters, translators, officers, printers, service of process, filing, expenses from telephone calls, copying, costs of original and copies of transcripts and reporter's attendance fees, court appointed experts . . . .

*DeHaven v. Hall*, 2008 S.D. 57, ¶ 52, 753 N.W.2d 429, 445 (quoting SDCL 15-17-37).

[¶34.]   Because the trial court provided the jury with the incorrect legal

standard for the recovery of emotional damages, we reverse and remand for trial.

[¶35.]   GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and

SEVERSON, Justices, concur.

[¶36.]   WILBUR, Justice, did not participate.